PEOPLE v McKENZIE

Docket No. 147416. Submitted May 5, 1994, at Lansing. Decided
     August 2, 1994, at 9:10 A.M. Leave to appeal sought.
     Marcy McKenzie was convicted by a jury in the Ingham Circuit
     Court, Carolyn Stell, J., of felony murder relating to an arson
     fire in an apartment complex inhabited mostly by senior citi-
     zens and the death of an elderly resident from a heart attack
     brought on by the excitement generated by the fire. The defen-
     dant appealed.
        The Court of Appeals *held:*
        1. The trial court did not err in denying the defendant's
     motion for a directed verdict. A rational trier of fact could have
     concluded that, in starting a fire in a senior citizens complex,
     the defendant acted with wanton and wilful disregard of the
     likelihood that the natural tendency of her behavior was to
     cause death or great bodily harm.
        2. The defendant's conviction was supported by sufficient
     evidence, including evidence concerning the foreseeability and
     the proximate cause of the death of the victim, who had a
     preexisting heart ailment and had been susceptible to stress.
        3. The trial court correctly refused to instruct the jury
     regarding the defense of accidental death, CJI2d 7.2. Such an
     instruction would not have been supported by the evidence or
     consistent with the defendant's theory of the case.
        4. The trial court did not err in refusing to give the addict-
     informer jury instruction, CJI2d 5.7. That instruction applies
     where the uncorroborated testimony of an addict-informer is
     the only evidence linking an accused to the alleged offense. In
     this case, the testimony of the addict-informer against the
     defendant was corroborated by other evidence.
        5. The trial court did not err in refusing to specifically
     instruct the jury with regard to how it could consider evidence
     presented by the defendant concerning the addict-informer's
     reputation for untruthfulness. No such standard jury instruc-
     tion exists, and the defendant failed to cite a rule of law
     requiring such a special instruction.
        Affirmed.

*Frank J. Kelley,* Attorney General, *Thomas L.*

*Casey,* Solicitor General, *Donald E. Martin,* Prosecuting Attorney, and *Samuel R. Smith,* Chief Appellate Attorney, for the people.

State Appellate Defender (by *Richard B. Ginsberg*), for the defendant on appeal.

Before: HOOD, P.J., and CAVANAGH and D. A. TEEPLE,* JJ.

PER CURIAM. Defendant was convicted by a jury on a charge of first-degree felony murder, MCL 750.316; MSA 28.548. Defendant, who was sentenced to life in prison, appeals her conviction as of right. We affirm.

The present case stems from a fire that originated in defendant's apartment in a complex inhabited almost exclusively by senior citizens. Defendant, who is not a senior citizen, was permitted to reside in the complex because she had a medical condition (epilepsy). On September 8, 1989, the resident manager made several trips to defendant's apartment to inform her that she would have to move out within thirty days because she had caused a number of disruptions. On the final trip, the manager observed a cigarette smoldering on defendant's bed sheet; the manager removed the sheet and left the apartment after defendant indicated that she intended to kill herself.

Four days later, on the evening of September 12, 1989, an alarm sounded and smoke was seen coming from defendant's door. The fire department was summoned and several residents began to assist others out of the building. Before the fire department's arrival, one of the residents, Mr. Gannon, forced defendant's door open and confirmed that her apartment was on fire. According

---

* Circuit judge, sitting on the Court of Appeals by assignment.

to Gannon, defendant was not in her apartment. All the residents were evacuated from the complex, including defendant's next-door neighbor, Emma Merritt. The fire department arrived and the blaze, which did not spread to other units, was extinguished after approximately one hour. Merritt, who was neither burned during the fire nor inhaled any smoke, collapsed on the sidewalk and died of a heart attack. The medical examiner who performed the autopsy opined that Merritt's heart attack was brought on by the excitement generated by the fire.

An examination of defendant's apartment led the authorities to conclude that the fire had been intentionally set. Defendant initially claimed that someone had thrown a Molotov cocktail through her window. Later, defendant stated that one of her multiple personalities may have started the fire by placing a lit cigarette on the bed. A trial was conducted and defendant presented the multiple personality/insanity defense. The jury found defendant guilty of first-degree felony murder. However, defendant was granted a new trial on the basis that both the prosecutor and defense counsel had misinterpreted the results of a blood alcohol test performed on defendant the evening of the fire. Defendant's blood alcohol level was much higher than thought to be by defense counsel and the prosecutor.

At the retrial, defendant abandoned the multiple personality/insanity defense. Instead, defendant focused on the cause of death and whether she was capable of forming the requisite intent for felony murder given her level of intoxication. The prosecutor offered the testimony of a resident from the complex who claimed that defendant approached her on the sidewalk after the evacuation and said, "I did a good job, didn't I." Additionally,

an inmate from the Ingham County Jail testified that, while awaiting retrial, defendant told her that she intentionally set the fire in response to the eviction notice. According to the inmate, defendant said that she did not intend to hurt anyone by starting the fire. The jury found defendant guilty as charged.

Defendant first argues that the trial court erred in denying her motion for a directed verdict. We disagree.

> When reviewing a denial of a motion for a directed verdict, this Court must consider the evidence presented by the prosecution up to the time the motion was made in a light most favorable to the prosecution and determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt. Circumstantial evidence and reasonable inferences therefrom may be sufficient to prove the elements of a crime. [*People v Morris,* 202 Mich App 620, 622; 509 NW2d 865 (1993). Citations omitted.]

To establish the crime of felony murder, the prosecution must present proofs from which the jury could rationally find that, while committing the underlying offense, the defendant acted with the intent to kill, with the intent to do great bodily harm, or with wanton and wilful disregard of the likelihood that the natural tendency of the defendant's behavior was to cause death or great bodily harm. *People v Aslin,* 179 Mich App 456, 458; 446 NW2d 832 (1989).

In the present case, a resident of the complex testified that while the fire was still ablaze, defendant remarked, "I did a good job, didn't I." Additionally, an inmate at the jail where defendant was housed stated that defendant admitted inten-

tionally setting the fire by placing a lit cigarette and a pair of electric curlers on the bed. This statement was corroborated by the evidence found at the scene by investigators. More specifically, investigators concluded that defendant's bed had been intentionally set on fire.

This evidence indicates that the fire that originated in defendant's bedroom had been intentionally set. Moreover, the resident who forcibly entered defendant's apartment to investigate the fire stated that no windows were broken before his entry and, further, that defendant's apartment seemed secure in all other respects. From this evidence a rational trier of fact could conclude that the underlying crime of arson had been committed. Additionally, the physician who performed the autopsy on Merritt's body testified that she died as a result of a heart attack brought on by the excitement surrounding the fire. Accordingly, because the corpus delicti of the crime of felony murder had been established, the prosecutor was free to introduce the testimony of the inmate who claimed that defendant admitted setting the fire.

On the basis of the foregoing, we believe that a rational trier of fact could have concluded that, by starting a fire in a senior citizens complex, defendant acted in such a manner as to exhibit a wanton and wilful disregard of the likelihood that the natural tendency of her behavior was to cause death or great bodily harm. *Aslin, supra.* Therefore, the trial court properly denied defendant's motion for a directed verdict. *Morris, supra.*

For the same reasons, we find unavailing defendant's argument that there was insufficient evidence to support her conviction of first-degree felony murder. Defendant argues that Merritt died as a result of a preexisting condition, and that the manner of her demise was not a foreseeable conse-

quence under the circumstances. To support this argument, defendant points to the testimony of the medical examiner, who stated that Merritt had a serious heart condition. The medical examiner opined that, given the severity of Merritt's condition, there was no guarantee that she would have lived another day notwithstanding the fire. Nonetheless, it was determined that Merritt's heart attack and subsequent death were brought on by the excitement generated by the fire.

As stated in *People v Flenon,* 42 Mich App 457, 462; 202 NW2d 471 (1972), a criminal defendant takes the victim as found. Nonetheless, defendant insists that she did not cause Merritt's death because Merritt was neither burned nor asphyxiated. *Aslin, supra,* is instructive. In *Aslin,* the defendant broke into the home of an elderly woman (that he knew) in the middle of the night and robbed her. The victim, Mrs. Stephens, had a severe heart condition but did not die while the robbery was in progress. In fact, after the defendant departed, she went outside and informed neighbors of the incident. Mrs. Stephens died of a heart attack at a neighbor's residence before the paramedics arrived. The *Aslin* panel held:

> We find the evidence produced at trial could lead a rational trier of fact to conclude that defendant knew about the victim's vulnerable state of health, and that defendant's actions were such as to evince a wilful or wanton disregard for the likelihood that serious consequences to his victim amounting to great bodily harm or death would result. Confronting an older woman in her own home at night, and twice knocking her down, was likely to cause her injury. Knowledge of her heart condition increased the predictability of serious harm from these actions. At a minimum another heart attack was likely and death possible. [179 Mich App 459.]

Defendant does not contest the fact that she resided in a complex inhabited primarily by senior citizens. By starting the fire, defendant deliberately set in motion a series of events that adversely affected the residents of her complex. Having been forced to flee their residences in desperation, the tenants became the victims of defendant's intentional act. In this case, defendant "found" one victim who had a severe heart ailment and a low tolerance for stressful events. It does not matter that, unlike the especially vulnerable Merritt, others would have been able to withstand the consequences of defendant's actions. Defendant took her victim as she found her. *Flenon, supra.*

Given these circumstances, the questions of foreseeability and proximate cause were properly left to the jury. *People v Clark,* 171 Mich App 656, 659; 431 NW2d 88 (1988); *People v Webb,* 163 Mich App 462, 464-465; 415 NW2d 9 (1987); *People v Moss,* 70 Mich App 18, 22; 245 NW2d 389 (1976). In short, sufficient evidence was presented from which a rational trier of fact could conclude that defendant committed the crime of first-degree felony murder with the predicate offense being arson.

Finally, defendant argues that the trial court failed to properly instruct the jury. Again, we disagree. We first note that defendant failed to object to the instructions that were actually given at trial. Therefore, the arguments raised concerning these instructions will not be reviewed because defendant failed to preserve this portion of her argument. No manifest injustice will result from our failure to review this portion of defendant's argument because the instructions that were given fairly presented the issues to the jury and sufficiently protected defendant's rights. *People v Curry,* 175 Mich App 33, 39; 437 NW2d 310 (1989).

Defendant additionally claims that the trial

court erroneously failed to instruct the jury regarding the defense of accidental death, CJI2d 7.2. We disagree. Failure to give this instruction was not erroneous because it was not supported by the evidence. Defendant claimed at trial that the fire was accidentally set. CJI2d 7.2 deals with a situation in which a defendant admits to having intentionally started a fire but lacked the intent to kill or cause great bodily harm to anyone. Therefore, the trial court did not err in failing to provide this instruction to the jury because it was not consistent with defendant's theory of the case.

Defendant also argues that the court erred in refusing to give CJI2d 5.7, the addict-informer instruction. Again, we find that the trial court did not err. Defendant claims that the instruction should have been given because the inmate who testified against her, Deloris Curry, was an admitted drug addict. First, although Curry volunteered damaging information to the authorities concerning defendant, this Court is satisfied from the record that Curry was not an "informant" as contemplated by CJI2d 5.7. Moreover, Curry's testimony was not uncorroborated but, instead, was supported by other evidence. The use note to CJI2d 5.7 provides that the instruction is to be used where the *uncorroborated* testimony of an addict informant is the only evidence linking the accused with the alleged offense. This is not the case here. Therefore, the trial court did not err in failing to give this instruction.

Defendant's final argument pertains to her request below that the trial court specially instruct the jury with regard to how it could consider the evidence presented by defense counsel regarding Curry's reputation for untruthfulness. No such standard jury instruction existed, and the trial court opted not to fashion a special instruction.

Defendant points to no rule of law mandating the trial court to fashion a special instruction under circumstances similar to these. We find no error in the trial court's refusal to do so.

Affirmed.