# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

TRAVIS LAMAR HUDSON,

      Defendant-Appellant.

UNPUBLISHED
April 20, 2017

No. 330603
Oakland Circuit Court
LC No. 2014-252721-FC

Before: SAWYER, P.J., and SAAD and RIORDAN, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of involuntary manslaughter, MCL 750.321, and possession of a firearm during the commission of a felony ("felony-firearm"), MCL 750.227b. Before trial, defendant pleaded guilty to charges of carrying a concealed weapon, MCL 750.227, felon in possession of a firearm, MCL 750.224f, and an additional count of felony-firearm, MCL 750.227b, all of which arose from the same incident as his other convictions. The trial court sentenced defendant, as a fourth habitual offender, MCL 769.12, to 25 to 40 years' imprisonment for his involuntary manslaughter conviction, 5 to 40 years' imprisonment for his felon in possession of a firearm conviction, 5 to 40 years' imprisonment for his carrying a concealed weapon conviction, and 2 years' imprisonment for each felony-firearm conviction. We affirm.

## I. FACTUAL BACKGROUND

In the afternoon on September 28, 2014, defendant was attempting to locate his stolen iPhone. Using a "Find my Phone" application, defendant believed that he had traced the phone to the residence of Armon Parker, who was at home playing videogames with his friends, Steffon Causey and Davion Witherspoon. Defendant, who was not acquainted with Parker, Witherspoon, or Causey, knocked on Parker's front door and asked Parker and Witherspoon whether they had any information about his missing phone. While Parker and Witherspoon were conversing with defendant, Causey also came to the door, telling Parker and Witherspoon to stop talking with defendant and to shut the door. Causey tried to close the door, and Parker and Witherspoon told Causey to "chill out." As defendant gestured during the conversation, his shirt came up, and Parker and Witherspoon both noticed that he was carrying a gun.

Ultimately, Parker let defendant inside the home. Then, defendant and Causey got into a confrontation regarding who should go down the stairs to the basement first. During the

-1-

altercation, defendant felt scared in light of Causey's aggressive behavior, so he pulled out his loaded gun.[1] He claimed that he held the gun by his side, pointing downward; that his hand was not on the trigger; and that he did not point the gun at Causey. Defendant and Causey exchanged more words, and Causey stepped toward defendant twice. Both times, defendant pushed Causey away with his forearm. Defendant eventually said, "I'm going to get with you later," and lowered his head, intending to step away. At that moment, Causey rushed toward defendant, reached for the gun, and grabbed defendant's arm, instigating a struggle over the weapon. Defendant said his back ended up against the front door during the struggle for the gun, and he attempted to retreat from Causey, but he could not reach the latch with his back arm to get out the door. Then, the gun went off. Defendant claimed that his hands and Causey's hands were both on the weapon when it fired. Causey was struck by the discharged bullet, which entered his abdomen and exited through his buttocks. Defendant fled from the scene. The next day, Causey died from the gunshot wound.

Defendant eventually surrendered to the police. He was charged with felony murder for Causey's death, with home invasion as the predicate felony, MCL 750.316(1)(b), as well as felon in possession of a firearm, carrying a concealed weapon, and two counts of felony-firearm. As stated, defendant pleaded guilty to carrying a concealed weapon, felon in possession of a firearm, and one count of felony-firearm. The case then proceeded to trial on the remaining charges. Defendant was convicted and sentenced as discussed above.

## II. JURY INSTRUCTIONS

Defendant's sole claim on appeal is that the trial court improperly instructed the jury on the causation element of involuntary manslaughter. Specifically, defendant claims that the trial court erred when it failed to provide an instruction on the issue of proximate causation related to Causey's allegedly negligent conduct of rushing toward defendant and grabbing for the gun.

Defendant has failed to establish that he is entitled to a new trial on this basis.

## A. PRESERVATION

The substance of defendant's claim is that the trial court erred when it failed to provide a jury instruction on contributory negligence in accordance with M Crim JI 16.20. At the end of the trial, the defense objected to the trial court's instructions, contending that they were insufficient on the issue of causation, and requested an instruction in accordance with M Crim JI 16.15. However, the defense failed to request an instruction in accordance with M Crim JI 16.20, or object to the trial court's failure to provide that instruction. Thus, defendant's claim of instructional error based on M Crim JI 16.20 is unpreserved, as "[a]n objection based on one

---

[1] According to defendant, he pulled the gun out because he wanted Causey to leave him alone. He also testified that (1) he was not prepared to actually use it; (2) he did not knowingly put his hand on the trigger; (3) he did not deliberately shoot Causey, intend to kill him, or intend to cause him great bodily harm; (4) he did not know how the gun discharged; and (5) the shooting was an accident.

ground is usually considered insufficient to preserve an appellate attack based on a different ground." *People v Kimble*, 470 Mich 305, 309; 684 NW2d 669 (2004); see also MCL 768.29; MCR 2.512(C); *People v Gonzalez*, 256 Mich App 212, 225; 663 NW2d 499 (2003); *People v Aldrich*, 246 Mich App 101, 124-125; 631 NW2d 67 (2001). Even so, defendant's general claim that the trial court failed to adequately instruct the jury on causation is preserved.

## B. STANDARD OF REVIEW AND APPLICABLE LAW

"A criminal defendant has the right to have a properly instructed jury consider the evidence against him." *People v Rodriguez*, 463 Mich 466, 473; 620 NW2d 13 (2000). As we explained in *People v Bartlett*, 231 Mich App 139, 143-144; 585 NW2d 341 (1998):

> This Court reviews jury instructions as a whole to determine whether there is error requiring reversal. The instructions must include all the elements of the charged offense and must not omit material issues, defenses, and theories if the evidence supports them. Even if somewhat imperfect, instructions do not create error if they fairly present to the jury the issues tried and sufficiently protect the defendant's rights. [Citations omitted.]

In general, claims of instructional error are reviewed *de novo*, *Bartlett*, 231 Mich App at 143, but "we review for an abuse of discretion a trial court's determination that a specific instruction is inapplicable given the facts of the case," *People v Hartuniewicz*, 294 Mich App 237, 242; 816 NW2d 442 (2011).

"Under MCL 769.26, a preserved nonconstitutional error is not grounds for reversal unless, after an examination of the entire cause, it affirmatively appears that it is more probable than not that the asserted error was outcome determinative." *People v Dupree*, 486 Mich 693, 710; 788 NW2d 399 (2010). "An error is deemed to have been 'outcome determinative' if it undermined the reliability of the verdict." *Rodriguez*, 463 Mich at 474 (citation omitted). See also *Bartlett*, 231 Mich App at 143-144 ("A conviction shall not be reversed where the error is harmless . . . . In reviewing a claim that the jury was improperly instructed, we will not reverse a verdict or order a new trial unless, after reviewing the record, it appears to this Court that the error resulted in a miscarriage of justice. A miscarriage of justice, or manifest injustice, occurs when an erroneous or omitted instruction pertained to a basic and controlling issue in the case. The defendant usually bears the burden of establishing error requiring reversal stemming from the issuance of an inappropriate jury instruction.") (citations omitted).[2]

---

[2] Instructional error may be "of constitutional magnitude." See *People v Carines*, 460 Mich 750, 761; 597 NW2d 130 (1999). "It is structural error requiring automatic reversal to allow a jury to deliberate a criminal charge where there is a complete failure to instruct the jury regarding any of the elements necessary to determine if the prosecution has proven the charge beyond a reasonable doubt." *People v Duncan*, 462 Mich 47, 48; 610 NW2d 551 (2000); see also *People v Kowalski*, 489 Mich 488, 503; 803 NW2d 200 (2011) ("[A] jury instruction that improperly omits an element of a crime amounts to a constitutional error.") However, "an instructional error

Defendant's unpreserved claim is reviewed for plain error affecting his substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). To demonstrate plain error, a defendant must show that (1) an error occurred, (2) the error was clear or obvious, and (3) "the plain error affected [the defendant's] substantial rights," which "generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*. at 763. Even if a defendant establishes a plain error that affected his substantial rights, "[r]eversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. at 763-764 (quotation marks and citation omitted; second alteration in original).

> We have previously held that jury instructions that were somewhat deficient may nonetheless, when viewed as a whole, have sufficed to protect a defendant's rights when the jury would have convicted the defendant on the basis of the evidence regardless of the instructional error. If the evidence related to the missing element was overwhelming and uncontested, it cannot be said that the error affected the defendant's substantial rights or otherwise undermined the outcome of the proceedings. [*People v Kowalski*, 489 Mich 488, 506; 803 NW2d 200 (2011) (citations omitted).]

## C. ANALYSIS

"Involuntary manslaughter is the unintentional killing of another without malice in combination with a specified culpable act or mental state, which includes a causation component." *People v Tims*, 449 Mich 83, 94; 534 NW2d 675 (1995) (quotation marks, citation, and emphasis omitted). More specifically, involuntary manslaughter consists of "[a]n unlawful act, committed with the intent to injure or in a grossly negligent manner, that proximately causes death . . . ." *People v McCoy*, 223 Mich App 500, 502; 566 NW2d 667 (1997). Causation, including factual and proximate causation, is generally an issue that is determined by the finder of fact. See *People v Feezel*, 486 Mich 184, 194-196, 201-202; 783 NW2d 67 (2010); *People v McKenzie*, 206 Mich App 425, 431; 522 NW2d 661 (1994).

The causation element of involuntary manslaughter is construed "in accordance with its common-law meaning." *Tims*, 449 Mich at 94. "The common-law causation element is comprised of two components, cause-in-fact or proximate/legal cause." *Id*. at 95. Thus, to prove

regarding one element of a crime, whether by misdescription or omission, is subject to a harmless error analysis," *id*. at 54, and unpreserved constitutional errors are subject to the plain error rule, *Carines*, 460 Mich at 764, 768. In sum:

> Instructional errors that omit an element of an offense, or otherwise misinform the jury of an offense's elements, do not necessarily render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence. Accordingly, an imperfect instruction is not grounds for setting aside a conviction if the instruction fairly presented the issues to be tried and adequately protected the defendant's rights. [*Kowalski*, 489 Mich at 501-502 (quotation marks and citations omitted).]

causation in the criminal context of this case, the prosecution was required to show that the defendant's conduct was both a factual and proximate cause of Causey's death. See *Feezel*, 486 Mich at 193-195. Notably,

> [i]n assessing criminal liability for some harm, it is not necessary that the party convicted of a crime be the sole cause of that harm, *only that he be a contributory cause that was a substantial factor in producing the harm.* The criminal law does not require that there be but one proximate cause of harm found. Quite the contrary, all acts that proximately cause the harm are recognized by the law. [*People v Bailey*, 451 Mich 657, 676; 549 NW2d 32 (1996), amended 453 Mich 1204 (1996) (emphasis added).]

See also *Tims*, 449 Mich at 94-97.

With regard to cause-in-fact, the prosecution is required to prove that but for the defendant's act, the victim's death would not have occurred. See *Feezel*, 486 Mich at 194-195, citing *People v Schaefer*, 473 Mich 418, 435-436; 703 NW2d 774 (2005); see also *People v Hudson*, 241 Mich App 268, 284-285; 615 NW2d 784 (2000); *People v Zak*, 184 Mich App 1, 9-11; 457 NW2d 59 (1990). With regard to proximate cause, the prosecution is required to prove that the defendant's act was a foreseeable cause of the death, *Feezel*, 486 Mich at 195, 201-202, citing *Schaefer*, 473 Mich at 436; see also *Zak*, 184 Mich App at 11-14, meaning that the prosecution must show that the victim's death was a "direct and natural" consequence of the defendant's conduct, *Schaefer*, 473 Mich at 436 (quotation marks and citations omitted). As the Michigan Supreme Court explained in *Feezel*, 486 Mich at 195-196:

> *Proximate causation is a legal construct designed to prevent criminal liability from attaching when the result of the defendant's conduct is viewed as too remote or unnatural. If the finder of fact determines that an intervening cause supersedes a defendant's conduct such that the causal link between the defendant's conduct and the victim's injury was broken, proximate cause is lacking and criminal liability cannot be imposed.* Whether an intervening cause supersedes a defendant's conduct is a question of reasonable foreseeability. Ordinary negligence is considered reasonably foreseeable, and it is thus not a superseding cause that would sever proximate causation. In contrast, "gross negligence" or "intentional misconduct" on the part of a victim is considered sufficient to break the causal chain between the defendant and the victim because it is not reasonably foreseeable. . . . Therefore, while a victim's negligence is not a defense, it is an important factor to be considered by the trier of fact in determining whether proximate cause has been proved beyond a reasonable doubt. [Quotation marks, citations, and footnote omitted; emphasis added.]

See also *Schaefer*, 473 Mich at 436-438.

Defendant is correct that the trial court did not specifically instruct the jury that the prosecution must prove both factual and proximate causation, and that the jury could not be expected to understand from the instructions provided by the court that the prosecution was required to prove both factual and proximate causation. See *Feezel*, 486 Mich at 203 (noting that

a jury cannot be expected to understand, without specific instruction, that "cause" is a legal term of art and, therefore, the prosecution is required to prove both factual and proximate causation); *Schaefer*, 473 Mich at 441 ("[T]he trial court erred because the word 'cause' . . . is a legal term of art normally not within the common understanding of jurors, and thus, simply reading the statute to the jury was insufficient. The jury could not be expected to understand that the statute required the prosecutor to prove *both* factual causation and proximate causation."). Providing an instruction in accordance with M Crim JI 16.15,[3] as requested by defendant, would have made the jury aware that both factual and proximate causation were required to find that defendant "caused" Causey's death.

On appeal, however, defendant now claims that the trial court's failure to instruct the jury in accordance with M Crim JI 16.20, regarding the victim's contributory negligence,[4] is an error requiring reversal. Specifically, he argues that providing an instruction regarding Causey's contributory negligence under M Crim JI 16.20 was necessary for the jury to properly determine factual and proximate causation in this case. M Crim JI 16.20 accounts for negligent conduct of the victim that causes or contributes to his death. It states, "If you find that [*the deceased*] was negligent, you may only consider that negligence in deciding whether the defendant's conduct was a substantial cause of the accident." M Crim JI 16.20. Accordingly, the instruction reflects the law that (1) a defendant's conduct must only be *a* proximate cause, or a substantial factor, of a victim's death in order for the defendant to have "caused" the victim's death, and (2) the victim's negligence is not a *defense*, but is only a factor to be considered in evaluating whether the defendant's conduct is a proximate cause of the victim's death. *Feezel*, 486 Mich at 196; *Tims*, 449 Mich at 97-99. "[T]he contributory negligence of a decedent will not exonerate a defendant of criminal responsibility, where the defendant's negligence is a proximate cause of the decedent's death." *Bailey*, 451 Mich at 678; *Tims*, 449 Mich at 97-99. Thus, an instruction in accordance with M Crim JI 16.20 is appropriate when there is evidence suggesting that negligent conduct of the victim may be relevant to the determination of whether the defendant proximately caused the victim's death. Cf. *Hartuniewicz*, 294 Mich App at 249-250 (indicating that there must be evidence in the record supporting a proposed instruction that is not an essential element of the charged offense).

---

[3] M Crim JI 16.15 provides:

> [There may be more than one cause of death.] It is not enough that defendant's act made it possible for the death to occur. In order to find that the death of [*name deceased*] was caused by the defendant, you must find beyond a reasonable doubt that the death was the natural or necessary result of the defendant's act.

The use note accompanying the instruction explains that the "instruction is designed for use where there is an issue as to whether the act of the defendant caused death, or whether death was caused by some intervening cause."

[4] The use note for M Crim JI 16.15 provides, "Where the conduct of the deceased may have caused or contributed to death, give M Crim JI, 16.20." Additionally, the use note for M Crim JI 16.20 states, "This instruction is for use when involuntary manslaughter or negligent homicide is charged."

Notably, it is within a trial court's discretion to determine whether a specific instruction is applicable under the particular facts of a case. *Dupree*, 486 Mich at 702. A trial court would act reasonably in declining to give M Crim JI 16.20 if there is no evidence from which the trier of fact could reasonably infer that the victim's conduct was an intervening cause that superseded the defendant's conduct and broke the causal link between the defendant's conduct and the victim's injury. See *Feezel*, 486 Mich at 195-196; *Hartuniewicz*, 294 Mich App at 249-250.

Even in crediting defendant's version of the incident, the evidence in this case did not support an instruction concerning Causey's alleged contributory negligence in grabbing for the gun. *Bartlett*, 231 Mich App at 143-144. Accordingly, defendant is unable to demonstrate a plain error affecting his substantial rights, as there is no basis for concluding that the trial court's omission of this instruction affected the outcome of the trial. See *Carines*, 460 Mich at 763-764.

Defendant brought a loaded gun into Parker's house knowing that Causey, who was acting aggressively, did not want him to come inside. Causey and defendant engaged in a dispute regarding who would proceed down the stairs first, and defendant pulled out his loaded gun. Causey "rushed" at defendant, reached for the gun, and grabbed defendant's arm. The two men began "struggling" and "tussling" over the gun, and, while both men's hands were on the gun, the gun discharged accidentally or unintentionally, directly causing Causey's death.[5] Given this evidence, there is no question that defendant's direct participation in the incident was a cause-in-fact of the gunshot that caused Causey's death. See *Feezel*, 486 Mich at 193-195; *Schaefer*, 473 Mich at 435-436; *Zak*, 184 Mich App at 9-14. There is no dispute that Causey's death was the result of the gunshot wound, and this wound would not have occurred but for defendant's act of pulling out the loaded gun, which prompted Causey to approach defendant and struggle for control of the gun.

More importantly, the record includes no basis for concluding that Causey's acts of rushing toward defendant and grabbing for the gun constituted a sufficient "intervening cause [that] supersede[d] . . . defendant's conduct" and broke "the causal link between the defendant's conduct and the victim's injury," so that "proximate cause is lacking and criminal liability cannot be imposed." *Feezel*, 486 Mich at 195-196. There can be no dispute as to whether Causey's death was a "direct and natural," or a foreseeable, result of defendant's act of pulling out the loaded gun during the altercation, *Feezel*, 486 Mich at 195, 201-202; *Schaefer*, 473 Mich at 438, or whether defendant's conduct was a substantial cause of Causey's gunshot-related death, *Bailey*, 451 Mich at 676; *Tims*, 449 Mich at 96-97.

> The linchpin in the superseding cause analysis . . . is whether the intervening cause was foreseeable based on an objective standard of reasonableness. If it was reasonably foreseeable, then the defendant's conduct will be considered a proximate cause. If, however, the intervening act by the victim or a third party was not reasonably foreseeable—e.g., gross negligence or intentional

---

[5] Defendant denied that he knowingly put his hand on the trigger or deliberately shot Causey, and he did not know how the gun was discharged. There was no testimony that Causey fired the gun.

misconduct—then generally the causal link is severed and the defendant's conduct is not regarded as a proximate cause of the victim's injury or death. [*Schaefer*, 473 Mich at 437-438.]

Given the evidence in this case, we cannot conclude that Causey's acts of rushing toward defendant and grabbing for the gun were unforeseeable. Instead, we find it highly foreseeable that an individual in Causey's situation, faced with a gun displayed during an altercation, would (1) perceive the danger presented by the gun, (2) fear that defendant might use the gun against him, and (3) react by attempting to disarm defendant by grabbing for the gun, thereby prompting a struggle for control of the gun. Furthermore, it is undoubtedly foreseeable that such a struggle could result in the discharge of a loaded gun. Therefore, given the objective foreseeability of Causey's conduct, his acts of rushing toward defendant and grabbing for the gun cannot constitute an intervening, superseding cause sufficient to break the causal chain between defendant's conduct and Causey's death that would eliminate defendant's criminal responsibility for the death. *Feezel*, 486 Mich at 193-195; *Schaefer*, 473 Mich at 437-438.

A "merely . . . contributory cause of death, in addition to the defendant's conduct," is not sufficient to cut off criminal liability. *Bailey*, 451 Mich at 678-681. Defendant's conduct did not have to be *the* proximate cause of the victim's death for criminal liability to attach. Instead, his conduct only needed to be *a* proximate cause, *i.e.*, a substantial factor in producing the harm. *Bailey*, 451 Mich at 676; *Tims*, 449 Mich at 95-97. Again, "the contributory negligence of a decedent will not exonerate a defendant of criminal responsibility, where the defendant's negligence is a proximate cause of the decedent's death." *Bailey*, 451 Mich at 678, citing *Tims*, 449 Mich 83.

For all of these reasons, the evidence did not support an additional instruction in accordance with M Crim JI 16.20 regarding Causey's alleged contributory negligence, and the trial court's failure to provide such an instruction did not constitute a plain error affecting defendant's substantial rights. See *Carines*, 460 Mich at 763-764.

We note that even though defendant broadly characterizes his claim on appeal by stating that the trial court failed to adequately instruct the jury on the issue of proximate causation, the gravamen of his claim is that the instructions provided by the trial court were insufficient on the issue of proximate cause *because they failed to instruct the jury to take into account the role of Causey's conduct in his own death as an "intervening cause"* that broke the causal connection between defendant's actions and Causey's death. We find it especially noteworthy that defendant does not contend that his conduct would have been insufficient on its own to constitute a proximate cause of Causey's death. For example, he does not contend that, without considering Causey's conduct, "the death is so remote from the defendant's conduct that it would be unjust to permit conviction." *Tims*, 449 Mich at 95. Accordingly, defendant has not identified any further error in the trial court's instructions on the issue of proximate causation, and we need not further consider whether the trial court adequately instructed the jury on the issue of causation.

Nevertheless, we note that defendant's constitutional rights were protected in this case, as the trial court provided an instruction that stated all of the elements of involuntary manslaughter in accordance with M Crim JI 16.10. See *People v Duncan*, 462 Mich 47, 48; 610 NW2d 551 (2000); *Kowalski*, 489 Mich at 503. The trial court also instructed the jury on defendant's theory

of self-defense.  See *Bartlett*, 231 Mich App at 143-144.  Again, reversal is not warranted by the court's failure to provide any supplemental or additional instructions on the issue of proximate causation, whether under M Crim JI 16.15 or M Crim JI 16.20, as the only rational view of the evidence is that defendant's conduct was the proximate cause of Causey's death.  See *id*.  Therefore, under the circumstances of this case, we conclude that the instructions provided by the trial court, "[e]ven if somewhat imperfect, . . . fairly present[ed] to the jury the issues tried and sufficiently protect[ed] the defendant's rights."  *Id*.

### III.  CONCLUSION

Defendant is not entitled to a new trial based on the trial court's failure to further instruct the jury on the issue of proximate causation.

Affirmed.

/s/ David H. Sawyer
/s/ Henry William Saad
/s/ Michael J. Riordan