*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JAVON ROBERT DABNEY,

        Defendant-Appellant.

UNPUBLISHED
March 21, 2024

No. 361972
Wayne Circuit Court
LC No. 21-000850-01-FC

Before: CAVANAGH, P.J., and JANSEN and MALDONADO, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of conspiracy to commit first-degree premeditated murder, MCL 750.157a & MCL 750.316(1)(a), armed robbery, MCL 750.529, three counts of assault with intent to commit murder (AWIM), MCL 750.83, carrying a concealed weapon (CCW), MCL 750.227, felon in possession of a firearm, MCL 750.224f(1), and six counts of possession of a firearm during the commission of a felony, second offense, MCL 750.227b. The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to concurrent prison terms of paroleable life imprisonment for the conspiracy conviction, 40 to 60 years each for the armed robbery and AWIM convictions, and 5 to 20 years each for the CCW and felon-in-possession convictions, to be served consecutive to six concurrent five-year terms of imprisonment for the felony-firearm convictions. We affirm.

## I. FACTUAL OVERVIEW

Defendant's convictions arise from his participation with Michael Allen in the December 5, 2018 armed robbery of Sammy's Appliance Store in Detroit and the nonfatal shootings of store personnel. The prosecution presented evidence that on December 5, defendant called the store several times to complain that appliances he purchased were not working. Subsequently, defendant visited the store twice, upset and continuing to complain about the appliances. During his second visit, defendant appeared very angry and requested a refund for the appliances. The store owner and an employee, who are both Arabic, told defendant that the store's policy, which was printed on his receipt, did not permit refunds. Defendant was told to leave and he threatened the employees before leaving the store. Approximately 30 minutes later, Allen entered the store,

-1-

demanded the location of the "Arabics," shot two employees, and fired shots toward a third employee before stealing the receipt books and fleeing the store.

The prosecution's theory at trial was that Allen, "the brawn," was acting on behalf of defendant, who was "the brains" and the person who was angry with the store's owners. Allen, who testified at trial pursuant to a plea agreement, claimed that defendant picked him up on December 5 and asked him to kill the Arab owners of the appliance store. Defendant drove him to the store, gave him a .40-caliber pistol, instructed him to take the receipt books after killing the owners, and dropped him off after the episode. Defendant gave Allen, who was addicted to drugs and alcohol at the time, approximately $18 and three packets of heroin for shooting the victims. The defense denied that defendant was involved in this incident, and argued that Allen was not a credible witness and there was nothing to prove that Allen and defendant were associates.

## II. EFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that he is entitled to a new trial because defense counsel was ineffective in several respects. We disagree.

A claim alleging ineffective assistance of counsel presents a mixed question of law and fact. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002); *People v Russell*, 297 Mich App 707, 715; 825 NW2d 623 (2012). Questions of law are reviewed de novo, and a trial court's findings of fact are reviewed for clear error. *Id*. "To demonstrate ineffective assistance of counsel, a defendant must show that his or her attorney's performance fell below an objective standard of reasonableness under prevailing professional norms and that this performance caused him or her prejudice." *People v Nix*, 301 Mich App 195, 207; 836 NW2d 224 (2013). "To demonstrate prejudice, a defendant must show the probability that, but for counsel's errors, the result of the proceedings would have been different." *Id*. The effective assistance of counsel is presumed, and the burden is on the defendant to establish the contrary. *People v Roscoe*, 303 Mich App 633, 644; 846 NW2d 402 (2014). The defendant also has the burden of establishing the factual predicate of his ineffective-assistance-of-counsel claim. *People v Douglas*, 496 Mich 557, 592; 852 NW2d 587 (2014).

### A. FAILURE TO CALL AN ALIBI WITNESS AND BRITTANY JOHNSON, AND TO USE PRIVATE INVESTIGATOR INFORMATION

Defendant first asserts that defense counsel was ineffective for failing to call two witnesses, his uncle (who "could have testified as to [defendant's] whereabouts at the time of the offense"), and Brittany Johnson ("who would have reported what Allen told her about the shooting and never mention[ed] [defendant]"). Decisions about defense strategy, including whether to call witnesses, are matters of trial strategy, *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999), and counsel has wide discretion in matters of trial strategy, *People v Heft*, 299 Mich App 69, 83; 829 NW2d 266 (2012).

Defendant claims that he informed defense counsel that his uncle could offer an alibi, and it is apparent that counsel was aware of Johnson because she gave a statement to the police and her name was mentioned during trial. Defendant has not overcome the presumption that defense counsel reasonably declined to call these two witnesses for various reasons, including that their

testimony would not have been helpful, and might have been harmful, to the defense. Although defendant asserts that the proposed witnesses' testimony would have been exculpatory, he has not provided any witness affidavits, or identified any other evidence of record, showing what testimony the witnesses would have offered if called. Indeed, defendant has not even identified his uncle. Further, absent such a showing, defendant cannot establish that he was prejudiced by defense counsel's failure to call his uncle or Johnson as witnesses. See *Nix*, 301 Mich App at 207. Accordingly, defendant has not demonstrated that defense counsel was ineffective for failing to call these witnesses at trial.[1]

## B. ADVISING DEFENDANT NOT TO TESTIFY

Defendant argues that defense counsel was ineffective for advising him not to testify because he had a prior conspiracy conviction. He asserts that if he had been called as a witness, he would have testified that he did not know Allen.

A criminal defendant has a fundamental constitutional right to testify at trial. US Const, Am XIV; Const 1963, art 1, §§ 17, 20. "Although counsel must advise a defendant of this right, the ultimate decision whether to testify at trial remains with the defendant." *People v Bonilla–Machado*, 489 Mich 412, 419; 803 NW2d 217 (2011). The decision to testify or not to testify is a strategic one "best left to an accused and his counsel." *People v Martin*, 150 Mich App 630, 640; 389 NW2d 713 (1986). "If the accused expresses a wish to testify at trial, the trial court must grant the request, even over counsel's objection." *People v Simmons*, 140 Mich App 681, 685; 364 NW2d 783 (1985). "[I]f defendant . . . decides not to testify or acquiesces in his attorney's decision that he not testify, the right will be deemed waived." *Id*. (quotation marks and citation omitted).

Defendant has not demonstrated that defense counsel was ineffective for advising him against testifying and not calling him as a witness. It is clear from the record that defendant and defense counsel discussed whether defendant should testify. The decision whether to call defendant as a witness was a matter of trial strategy, *Russell*, 297 Mich App at 716, for which counsel has wide discretion, *Heft*, 299 Mich App at 83, and defendant has not identified or offered any evidence to overcome the strong presumption of sound strategy in counsel's advice that defendant not testify. Further, there is no indication in the record that defendant expressed a desire to testify to counsel. To the contrary, the record shows that the trial court questioned defendant at length about his decision not to testify, which included the following exchange:

---

[1] As part of this claim, defendant also states that defense counsel was ineffective for failing "to use information from a private investigator," but he fails to provide any information about what a private investigator supposedly discovered and does not otherwise discuss this claim in his analysis. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims[.]" *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998). A defendant abandons his claims when he fails to make a meaningful argument in support of his position. See MCR 7.212(C)(7); *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009). Consequently, defendant has abandoned his claim that defense counsel was ineffective for failing to use information from a private investigator.

*The court*: And, Sir, you understand that as the defendant in this case, you have the absolute right to remain silent?

*Defendant*: Yes.

*The court*: And if you choose to remain silent, the jury will be instructed they can't use it against you in any way in making their decision. Do you understand that?

*Defendant*: Yeah.

*The court*: But you also have the right to waive that right to remain silent, take the stand, and tell your version of the facts. Do you understand that?

*Defendant*: Yes.

*The court*: And have you had an opportunity to discuss with your attorney whether you wish to testify or not testify in this case?

*Defendant*: Yeah.

*The court*: And what is your decision?

*Defendant*: Not to testify.

*The court*: Okay. And has anyone promised you anything to get you to waive your right to take the stand?

*Defendant*: No.

*The court*: Has anyone threatened or coerced you in any way to waive your right to testify?

*Defendant*: No.

*The court*: It's your own free and voluntary decision?

*Defendant*: Yes.

*The court*: You understand [defense counsel] can give you advice, but it's ultimately your decision to make?

*Defendant*: Right.

*The court*: And are you satisfied with [defense counsel's] advice and counsel that he's given you with regard to this decision?

*Defendant*: Yes, Ma'am.

Defendant does not claim that he was ignorant of his right to testify, or that defense counsel coerced him into not testifying. Based on the foregoing, defendant cannot show that defense counsel was ineffective for advising him not to testify.

## C. FAILURE TO CALL A CELL PHONE EXPERT

Defendant also asserts that defense counsel should have called a defense cell phone expert to attack the prosecution's cell phone tracking testimony. A defendant cannot establish his claim of ineffective assistance of counsel using speculation that an expert would have testified favorably. *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009). In this case, defendant has not submitted an offer of proof regarding the substance of any testimony a defense expert could have offered.[2] Defendant's mere speculation that an expert might be able to provide unspecified favorable testimony is insufficient to show that defense counsel's failure to call an expert was objectively unreasonable, or that there is a reasonable probability that the outcome of trial would have been different if an expert had been called. See *Heft*, 299 Mich App at 83; *Rockey*, 237 Mich App at 76. Accordingly, defendant has not demonstrated that defense counsel was ineffective for failing to call a defense expert.

## D. FAILURE TO REQUEST THE ADDICT-INFORMER JURY INSTRUCTION

Defendant next faults defense counsel for failing to request M Crim JI 5.7, a jury instruction on addict-informer testimony, in relation to Allen, who described himself as a "[d]rug addict, loser." M Crim JI 5.7 provides:

> (1) You have heard the testimony of _____, who has given information to the police in this case. The evidence shows that [he / she] is addicted to a drug, namely _____.

> (2) You should examine the testimony of an addicted informer closely and be very careful about accepting it.

> (3) You should think about whether the testimony is supported by other evidence, because then it may be more reliable. However, there is nothing wrong with the prosecutor using an addicted informer as a witness. You may convict the defendant based on such a witness's testimony alone if you believe the testimony and it proves the defendant's guilt beyond a reasonable doubt.

> (4) When you decide whether to believe [*name witness*], consider the following:

---

[2] This Court previously granted defendant's motion to hold this appeal in abeyance until "after the completion of [a] report by defendant's expert concerning the extraction and analysis of the cellphones at issue." *People v Dabney*, unpublished order of the Court of Appeals, entered October 10, 2023 (Docket No. 361972). However, defendant later notified this Court that his expert was unable to perform the extraction and analysis.

(a)  Did the fact that this witness is addicted to drugs affect [his / her] memory of events or ability to testify accurately?

(b)  Does the witness's addiction give [him / her] some special reason to testify falsely?

(c)  Does the witness expect a reward or some special treatment or has (he / she) been offered a reward or been promised anything that might lead (him / her) to give false testimony?

(d)  Has the witness been promised that (he / she) will not be prosecuted for any charge, or promised a lighter sentence or allowed to plead guilty to a less serious charge? If so, could this have influenced (his / her) testimony?

(e)  Was the witness's testimony falsely slanted to make the defendant seem guilty because of the witness's own interests or to remove suspicion from others, or because (he / she) feared retaliation from others in drug trafficking?

(f)  Was the witness affected by the fear of being jailed and denied access to drugs?

(g)  Does the witness have a past criminal record?

(5)  In general, you should consider an addicted informer's testimony more cautiously than you would that of an ordinary witness. You should be sure you have examined it closely before you base a conviction on it.  [Brackets in original.]

The use note for M Crim JI 5.7 states that the

instructions are based on similar instructions on accomplice testimony.  Upon request the trial court and the prosecutor must disclose any leniency or immunity granted the witness or any reasonable expectations of leniency resulting from contact with the prosecutor.  This is a cautionary instruction to be used where the uncorroborated testimony of an addict informant is the only evidence linking the accused with the alleged offense.

"Trial counsel is responsible for preparing, investigating, and presenting all substantial defenses," and "[f]ailing to request a particular jury instruction can be a matter of trial strategy." *People v Thorne*, 322 Mich App 340, 347; 912 NW2d 560 (2017) (quotation marks and citations omitted).  Due process requires that the trial court "properly instruct the jury so that it may correctly and intelligently decide the case." *People v Clark*, 453 Mich 572, 584-585; 556 NW2d 820 (1996). To that end, the jury instructions "must include all the elements of the crime charged, and must not exclude from jury consideration material issues, defenses or theories if there is evidence to support them." *People v Armstrong*, 305 Mich App 230, 240; 851 NW2d 856 (2014) (quotation marks and citation omitted).  Jury instructions are, however, reviewed in their entirety to determine

whether any error requiring reversal occurred. *People v Kowalski*, 489 Mich 488, 501; 803 NW2d 200 (2011). An imperfect instruction will not warrant reversal if the instructions, examined as a whole, fairly presented the issues to be tried and sufficiently protected the defendant's rights. *Id*. at 501-502.

Considering the evidence presented in this case and the trial court's other jury instructions, defense counsel's decision not to request an addict-informer instruction was not objectionably unreasonable, and did not prejudice defendant. While Allen described himself as a drug and alcohol addict, M Crim JI 5.7 "is to be used where the *uncorroborated* testimony of an addict informant is the *only* evidence linking the accused with the alleged offense." *People v McKenzie*, 206 Mich App 425, 432; 522 NW2d 661 (1994) (emphasis added). In this case, there was other evidence linking defendant to the offenses. In particular, defendant was linked to the shooting because, approximately 30 minutes earlier, he visited the store and became very argumentative with the Arabic store personnel and threatened them. Witnesses also testified that when Allen arrived at the store, he stated that he was looking for the "Arabics" and opened fire. This information led police witnesses, who were unaware of Allen's identity at the time, to suspect that defendant may have facilitated the shooting. Indeed, store employees testified that defendant was very angry as he argued with the owner and an employee, and before leaving the store after his second visit that day, he said: "Don't be surprised if something happen to you all before the night over with." Shortly thereafter, Allen entered the store looking for the Arabic store personnel, ultimately fired multiple shots, and stole only the receipt books before fleeing. Furthermore, Allen's testimony regarding where defendant picked him up before the shooting, when they went to the appliance store, and where defendant dropped him off after the shooting was corroborated by cellular phone tracking evidence for defendant's cell phone. Because Allen's testimony was not uncorroborated or the only evidence linking defendant to the alleged offenses, the addict-informer instruction under M Crim JI 5.7 was inapplicable. *Id*. Therefore, defense counsel was not ineffective for failing to request it.

Furthermore, the use notes for M Crim. JI 5.7 recognize that there may be other instructions that may also be applicable. As the trial court recognized when denying defendant's motion for an evidentiary hearing or a new trial on this basis, Allen's addiction to drugs and alcohol at the time of the shooting and the details of his plea agreement, including that Allen agreed to testify against defendant pursuant to a sentence agreement for a reduced sentence, were issues that were fully explored at trial. The court also observed that it gave other instructions that adequately advised the jury in a manner similar to M Crim JI 5.7 on how to evaluate Allen's credibility. In particular, the court gave instructions on how to evaluate the testimony from an undisputed accomplice, and the effect of a plea agreement when evaluating a witness's credibility. The court instructed that Allen had already been convicted of the same crime and was an accomplice, instructed the jury to "examine an accomplice's testimony closely and be very careful about accepting it," and to consider, *inter alia*, (1) was his "testimony falsely slanted to make the defendant seem guilty because of the accomplice's own interests, bias, or for some other reason," (2) has "the accomplice been offered a reward or been promised anything that might lead him to give false testimony," and (3) has "the accomplice been promised that he will not be prosecuted, or promised a lighter sentence, or allowed to plead guilty to a less serious charge? If so, could this have influenced his testimony?" Further, the trial court instructed the jury that there was evidence that Allen "made an agreement with the prosecutor about charges against him, and a Sentence

Agreement in exchange for his testimony in this trial," that he "faces a possible penalty of up to life or any term of years as a result of those charges," and "to consider this evidence only as it relates to [his] credibility as it may tend to show [his] bias or self-interest." The trial court's instructions also advised the jury that in determining whether a witness was credible, it should consider factors such as whether "anything else [was] going on that might have distracted the witness," "[d]id the witness seem to have a good memory," "[d]oes the witness have any bias, prejudice, or personal interest in how this case is decided," and "does the witness have any special reason to lie." These instructions adequately advised the jury to consider the impact of Allen's disposition, whether he had a motive to lie, and his plea agreement when evaluating his credibility.

In sum, because M Crim. JI 5.7 did not precisely fit the facts of this case and because the trial court's remaining instructions adequately advised the jury on how to consider Allen's credibility, defendant cannot show a reasonable probability that, but for counsel not requesting the addict-informer instruction, the result of the proceedings would have been different. See *Nix*, 301 Mich App at 207.

## E. FAILURE TO OBJECT TO THE PROSECUTOR'S IMPROPER VOUCHING

Defendant also asserts that the prosecutor, who "is not a human lie detector," improperly vouched for Allen's honesty, and that defense counsel was ineffective for failing to object to the following comments by the prosecutor during closing argument:

> And Michael Allen had nothing to lose. Michael Allen gained nothing out of this. He didn't gain anything.

> Now, there was questioning about him gaining, oh, a shorter sentence versus a longer sentence. Last time I checked, doing 14 to 20 years in prison is a pretty significant sentence.

> And he also, what he indicated, he was risking his life to testify. You cannot quantify that, ever. You cannot quantify your life ever with regards to that. So he may be doing 14 to 20, but he's risking his life is what he said.

A prosecutor may not vouch for the credibility of a witness by conveying that he or she has some special knowledge that the witness is testifying truthfully. *People v Knapp*, 244 Mich App 361, 382; 624 NW2d 227 (2001). However, a "prosecutor may fairly respond to an issue raised by the defendant[,]" *People v Brown*, 279 Mich App 116, 135; 755 NW2d 664 (2008), and may argue the evidence and all reasonable inferences that arise from the evidence as they relate to the prosecutor's theory of the case. *People v Bahoda*, 448 Mich 261, 282; 531 NW2d 659 (1995) (quotation marks and citation omitted). Prosecutors are also permitted to argue from the facts in evidence that a witness is worthy of belief. *People v Cain*, 299 Mich App 27, 36; 829 NW2d 37 (2012), vacated in part on other grounds 495 Mich 874 (2013).

The challenged remarks, viewed in context, were part of a permissible argument regarding credibility and were responsive to defense counsel's implication and assertions throughout trial that Allen was not credible. The prosecutor did not refer to any special knowledge, beyond the evidence presented at trial, to indicate that she knew Allen was truthful. The prosecutor argued

that Allen should be believed because there was evidence that (1) defendant was the person who had a connection to the appliance store, i.e., defendant argued with store personnel and threatened them approximately 30 minutes before the shooting, (2) Allen had no independent connection to the store and did not take anything of value for him from the store, (3) tracking of defendant's cell phone corroborated Allen's testimony regarding his and defendant's movements at the time of the episode, and (4) that Allen's plea deal still resulted in a significant sentence of 14 years, and, according to Allen, placed his life at risk because he chose to testify for a reduced sentence.

Further, similar to *Cain*, it was the defense theory that Allen was not credible, and the prosecutor was permitted to respond that he had no motive to lie. See *Cain*, 299 Mich App at 37. For example, in opening statement, defense counsel stated: [T]here's no videos, there's no audio, there's nobody but Mr. Allen saying these things happened . . . . But if you think about it, it doesn't make sense." Defense counsel cross-examined Allen at length about his account of what occurred, and elicited that (1) Allen was experiencing the effects of withdrawal from heroin and alcohol at the time he committed the shooting, (2) Allen had no idea about defendant's alleged dispute with the Arabic owners before the shooting, (3) Allen initially told the police that he "don't even remember what [defendant] really said[,]" (4) that Allen admitted that there was never any price established for Allen to commit the shooting supposedly for defendant, and (5) that Allen was a member of the Latin Kings gang. Defense counsel questioned Allen's alleged relationship with defendant, emphasizing that they were not friends on any social media platform. Defense counsel also questioned Allen about his plea agreement, eliciting that Allen asked the police "20 or 30 times" how much he could reduce "the time" he was facing for the crimes. Counsel specifically questioned Allen about the numerous charges he was originally facing, the charges that were dismissed, whether he was originally facing life imprisonment, and how his sentence was significantly reduced from a possible life sentence because he agreed to testify against defendant. Allen agreed when defense counsel stated that Allen was "not testifying because . . . it's the right thing to do," but because of the "time reduction." In closing argument, defense counsel reiterated and summarized the defense theory, arguing, *inter alia*, that (1) Allen testified against defendant knowing what "he has to say" because of his plea agreement, (2) drug users are "much better liars than any other people," (3) Allen has no social media connections with defendant "[a]nd everybody has social media" to show that they were friends, (4) Allen had a motive to lie because he "obviously received a sentence reduction," and (5) this case was not the first time that Allen testified "about somebody in order to get a better deal for himself." Defense counsel's opening statement, cross-examination of Allen, and closing argument clearly involved challenges to the credibility of Allen's account of the offenses.

In sum, the prosecutor's argument was responsive to the defense theory presented throughout trial that Allen was untruthful. Further, the prosecutor's arguments were based on the evidence and Allen's appearance at trial, and the prosecutor did not suggest that she had some special knowledge, unknown to the jury, that Allen was truthful. Therefore, the prosecutor's remarks were not improper.

Furthermore, to the extent that the prosecutor's remarks could be considered improper, defendant is not entitled to a new trial. In its final instructions, the trial court instructed the jury that the lawyers' statements, arguments, and any commentary are not evidence, that the jurors are the sole judges of witness credibility, and that the jury was to follow the court's instructions. The trial court's instructions were sufficient to dispel any possible prejudice arising from the

prosecutor's remarks and to protect defendant's substantial rights. See *People v Long*, 246 Mich App 582, 588; 633 NW2d 843 (2001). Jurors are presumed to have followed their instructions, *People v Breidenbach*, 489 Mich 1, 13; 798 NW2d 738 (2011), and defendant has not provided any basis for concluding that the jurors failed to do so in this case.

For these reasons, the prosecutor's remarks, which were responsive to the evidence and defense theories presented at trial, were not improper. Therefore, counsel's failure to object was not objectionably unreasonable. Failure to advance a "futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010). Further, because the trial court's jury instructions were sufficient to dispel any possible prejudice, there is no reasonable probability that counsel's failure to object affected the outcome of defendant's trial. See *Nix*, 301 Mich App at 207. Therefore, defendant cannot establish a claim of ineffective assistance of counsel.

## F. ADVISING DEFENDANT TO REJECT A NO-CONTEST PLEA OFFER

In his last ineffective-assistance claim, defendant faults defense counsel for advising him to reject a no-contest plea offer and proceed to trial. Defendant claims that defense counsel advised him that the only evidence against him was from Allen, who could be impeached because he was not a credible witness, was a drug addict, and had a fraud conviction. Defendant further claims that counsel did not inform him that he could "get life if [he] went to trial," but told him that he "would go home." The record does not support this claim.

"Defendants are entitled to the effective assistance of counsel when considering or negotiating a plea agreement." *People v White*, 331 Mich App 144, 148; 951 NW2d 106 (2020). "Defense counsel's obligation was to properly advise defendant regarding the nature of the charges or the consequences of the guilty plea and the possible defenses to the charges to which the defendant is pleading guilty, so defendant has the ability to make an intelligent and informed choice from among his alternative courses of action." *Id*. (quotation marks and citation omitted.) As with any other claim of ineffective assistance, "[t]he defendant has the burden of establishing the factual predicate of his ineffective assistance claim." *Douglas*, 496 Mich at 592. To demonstrate prejudice with respect to ineffective assistance of counsel in the plea-bargaining process, the " 'defendant must show the outcome of the plea process would have been different with competent advice.' " *Id*., quoting *Lafler v Cooper*, 566 US 156, 163-164; 132 S Ct 1376; 182 L Ed 2d 398 (2012).

Considering the record in this case, defendant is not entitled to a new trial on the basis of defense counsel's alleged advice to reject a no-contest plea offer. Preliminarily, contrary to what defendant asserts, there is no record evidence that the prosecution ever negotiated or offered defendant a no-contest plea. The prosecution's plea offers were placed on the record at four different hearings before trial and none of those offers mentioned a no-contest plea. Counsel could not have been ineffective for advising defendant to reject a type of plea that was never offered. Furthermore, the record does not support defendant's claim that counsel never informed him that he could be sentenced to life imprisonment if convicted at trial. The record is clear that defendant was informed on numerous occasions, and expressed his understanding at the last hearing before trial, that he could be sentenced to life with parole if found guilty at trial. In response to both defense counsel's and the trial court's questions, defendant expressed that he understood the

potential life sentence if he was found guilty. Defendant reiterated his choice to proceed to trial. Thus, the record does not support defendant's claims that he was offered a no-contest plea or that he was unaware that he could be sentenced to life imprisonment if he was found guilty. See *Douglas*, 496 Mich at 592 (defendant has the burden of establishing the factual predicate of his ineffective-assistance-of-counsel claim).

Further, even accepting defendant's claim about why defense counsel supposedly advised him to reject the plea offer, defendant cannot show that counsel was ineffective. Defendant claims that counsel informed him that he could impeach Allen. The record shows that defense counsel cross-examined Allen at length at trial and attempted to impeach his credibility by vigorously offering a multitude of reasons why Allen's testimony should not be believed, and revisited the credibility issues during closing argument. Indeed, had defense counsel managed to convince the jury that Allen, who clearly had credibility issues that were explored at trial, was not a truthful witness, defendant likely would have been acquitted. The fact that defense counsel's strategy did not work does not constitute ineffective assistance of counsel. *People v Stewart*, 219 Mich App 38, 42; 555 NW2d 715 (1996).

In sum, we agree with the trial court's finding when denying defendant's motion for a new trial or evidentiary hearing on this matter, which was: "I think at this point, *it's in hindsight* he's regretting not taking that plea offer, and it was clearly explained to him what [amount of prison time] he was facing." Defendant's own unsupported arguments and the record support this finding. In his affidavit filed with his motion for a new trial, defendant asserted: "I would have accepted the plea to avoid doing life . . . . I would like the opportunity to take the plea bargain now that I understand everything." As plaintiff aptly notes: "Defendant's regret—in hindsight—does not prove that he would have accepted the deal when it was offered." Indeed, the record clearly demonstrates that defendant understood when he rejected the plea offer that he could be sentenced to life imprisonment if he was found guilty at trial. Defendant has not demonstrated that defense counsel was ineffective in this regard.

Affirmed.

/s/ Mark J. Cavanagh
/s/ Kathleen Jansen
/s/ Allie Greenleaf Maldonado