*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
April 23, 2020

Plaintiff-Appellee,

v

No. 345633
Monroe Circuit Court

TODD MATTHEW MOYER,

LC No. 18-244207-FH

Defendant-Appellant.

Before: RIORDAN, P.J., and FORT HOOD and SWARTZLE, JJ.

PER CURIAM.

This case involves the tragic death of a woman and her young child when defendant rear-ended them on the expressway, resulting in a multi-vehicle accident. Defendant, who was traveling at high speed and texting on his cellphone, failed to brake before the impact. The jury convicted defendant of two counts of reckless driving causing death. On appeal, defendant argues that the trial court erroneously failed to instruct the jury that another driver was an intervening cause between his conduct and the victims' deaths. In addition, defendant argues that the prosecutor violated his due-process rights because police did not preserve two of the other vehicles involved in the crash. Because we discern no merit in defendant's arguments, we affirm.

## I. BACKGROUND

Defendant's convictions arise from the deaths of Gladys Johnson and her five-year-old daughter on July 14, 2017. On that afternoon, Johnson was traveling southbound on US-23, a two-lane highway, when her vehicle was involved in a multi-vehicle accident. Johnson was driving a Hyundai Elantra and defendant was driving a Dodge pickup truck directly behind her vehicle. Other vehicles involved in the collision included a Cadillac driven by Michael Huffer and a Toyota Solara operated by Chase Miller. Keith Godfrey and Harvey Moskowitz were also traveling southbound on US-23 that day. Although their vehicles did not sustain any damage, from their vantage points ahead of and behind the collision, Godfrey and Moskowitz claimed to have witnessed some of the events that occurred before impact.

In the minutes before the accident, the vehicles were approaching a construction zone that would ultimately shut down the right lane of southbound US-23. As part of this lane closure,

traffic was required to merge into the left lane. Moments before the collision, Godfrey, Huffer, Johnson, defendant, and Moskowitz, in that order, were traveling in the left lane of southbound US-23. Chase Miller was traveling in the right lane.

Several witnesses testified that before the fatal collision, the surrounding traffic had reduced its speed in anticipation of the impending right-lane closure. At least three witnesses recalled that the merging traffic was unusually polite and orderly. Miller testified that he had reduced his speed considerably as he approached the lane closure. This testimony was corroborated by Patricia Huffer, who testified that consistent with the other drivers, Miller was operating his vehicle in a polite fashion and he had reduced his speed to merge in behind the vehicle her husband was driving. Additionally, Miller testified that he saw that Johnson acknowledged his presence, gestured to him, and then reduced her speed to allow him to merge in front of her.

Howard Moskowitz, who testified for the defense, claimed that he had been traveling in the left lane, behind defendant's pickup truck, for about two or three miles. He further testified that the traffic was moving fast, about 70 to 75 mph, but it was slowing. Moskowitz claimed that he saw an 18-wheel semitruck in the right lane of travel. He also claimed that he saw in his mirror a "dot" coming toward him in the right lane, moving a lot faster than he was. Moskowitz testified that the vehicle was traveling 75 to 80 mph. According to Moskowitz, after this vehicle passed him, it turned sharply to the left in front of the Johnson vehicle. Moskowitz admitted that he never saw any impact between the Johnson and Miller vehicles. He also did not see defendant's pickup truck rear-end the Johnson vehicle, a fact that was undisputed. Immediately after the accident, while speaking to a police officer, Moskowitz did not mention the presence of a semitruck in the right lane.

Moskowitz's testimony was inconsistent with virtually every other witness who was traveling on US-23 near the time of the accident. No other witness mentioned the presence of the semitruck. Indeed, the three witnesses in closest proximity to the events testified that there were no other vehicles in the right lane. Further, three witnesses testified that the traffic had slowed considerably. Both Patricia Huffer and Miller testified that the Miller vehicle had slowed as well. Moskowitz also admitted that from his vantage point, he never actually saw a collision. Further, Moskowitz's claim that the Miller vehicle was traveling at a high rate of speed and then turned sharply into the left lane was inconsistent with the unrefuted expert opinion of the accident reconstructionist who testified that the tire mark left by the Miller vehicle was not consistent with a vehicle being driven in the manner suggested by Moskowitz.

When the first police officer at the scene asked defendant if he had been using his cell phone before the accident, defendant replied, "yes," and then hung his head down. Police obtained access to defendant's cellphone, and discovered that he sent a text message to his friends immediately before the fatal crash. Within minutes after the crash, defendant texted his friends: "Just got accident," "Not coming. Car is totoaled [sic]." One minute later, defendant texted his friends: "OMG. I'm f*cke [sic]. Two ppl killed." And then two minutes later, he texted to this same group, "I'm going to jail."

After the accident, the police secured, photographed, and measured Miller's vehicle. When they completed their investigation, the police released the vehicle because they determined that it

was not relevant to the criminal charges against defendant. Specifically, the police concluded that Miller's operation of his vehicle did not precipitate the multi-vehicle collision. Deputy Brian Quinn, an accident reconstructionist, testified that he examined all of the vehicles at the scene. He explained that he did not request the event data recorder (EDR) from the Miller vehicle because there was no airbag deployment and, thus, it was unlikely that the EDR was activated. Sergeant David Raymond testified that he did not attempt to recover the EDR from the Miller vehicle because there was no reason to believe that information from Miller's EDR would be relevant. He noted that there was no evidence that Miller was on his phone or that the operation of his vehicle caused the collision.

At trial, the prosecutor argued that the multi-car collision occurred when defendant, traveling 78 mph while texting on his cell phone, rear-ended the Johnson vehicle. Defendant admitted that he rear-ended the Johnson vehicle. He also admitted that he was using his cell phone at different points of his drive that day. He argued, however, that there was no proof that he was using his phone at the time of the collision. Instead, defendant argued that Miller caused the chain of events that led to the Johnsons' deaths when he failed to merge into the left lane of travel in an orderly fashion and, instead, cut off the Johnson vehicle.

The jury convicted defendant of two counts of reckless driving causing death, MCL 257.626(4), for which the trial court sentenced him to concurrent prison terms of 86 months to 15 years each. This appeal followed.

## II. ANALYSIS

### A. INTERVENING ACTS

Defendant first argues that the trial court erroneously denied his request to instruct the jury regarding the allegedly intervening acts of Miller. We find no instructional error warranting relief.

This Court reviews de novo jury instructions that involve questions of law, but reviews for an abuse of discretion a trial court's decision that a jury instruction is applicable to the facts of the case. *People v Gillis*, 474 Mich 105, 113; 712 NW2d 419 (2006). A defendant is entitled to have a properly instructed jury consider the evidence against him. *People v Riddle*, 467 Mich 116, 124; 649 NW2d 30 (2002). The trial court must instruct the jury on all the elements of the charged offense, as well as on material issues, defenses, and theories that are supported by the evidence. *People v Rodriguez*, 463 Mich 466, 472-473; 620 NW2d 13 (2000). A trial court is only required to give a requested instruction if it is warranted by the evidence presented. *Riddle*, 467 Mich at 124. "Even if the instructions are imperfect there is no error if they fairly presented the issues to be tried and sufficiently protected the defendant's rights." *People v Milton*, 257 Mich App 467, 475; 668 NW2d 387 (2003).

The trial court instructed the jury according to M Crim JI 15.16 as follows:

The defendant is charged in Counts I and II with the crimes of Reckless Driving Causing Death. To prove these charges, the prosecutor must prove each of the following elements – each of the following elements beyond a reasonable doubt:

First, that the defendant drove a motor vehicle on a highway or other place, open to the public.

Second, that the defendant drove the motor vehicle in willful or wanton disregard for the safety of persons or property. Willful or wanton disregard means more than simple carelessness, but does not require proof of an intent to cause harm. It means knowingly disregarding the possible risks to the safety of people or property.

Third, that the defendant's operation of the vehicle caused the victim's death. To cause the victim's death, the defendant's operation of the vehicle must have been a factual cause of the death, that is, but for the defendant's operation of the vehicle, the death would not have occurred. In addition, operation of the vehicle must have been a proximate cause of the death, that is, death or serious injury must have been a direct and natural result of operating the vehicle.

The trial court's instruction included the causation requirements of the charged offenses of reckless driving causing death. That is, the trial court properly instructed the jury that it could only convict defendant of the charged offenses if it found that defendant's conduct was both a factual and a proximate cause of the Johnsons' deaths.

Defendant asserts, however, that the trial court should have instructed the jury regarding Miller's allegedly intervening and superseding actions. At trial, defendant argued that Miller's attempt to merge into the left lane of travel broke the causal link between his conduct and the Johnsons' deaths. Defendant requested the following special jury instruction:

Defendant Moyer claims that a 3rd party, Chase Miller, was negligent in causing the deaths of Gladys Johnson and [ZK] Johnson. Whether a 3rd party's conduct rendered the defendant's conduct too remote to be a proximate cause of the deaths is for you to decide. If you find that this 3rd party was negligent, you may only consider that negligence in deciding whether Defendant Moyer's conduct was a substantial cause of the accident.

The trial court was not required to instruct the jury in the manner suggested by defendant. The instructions given, particularly M Crim JI 15.16, accurately explained the proximate-cause standard. In any event, as explained below, the evidence at trial did not support the requested instruction because, as a matter of law, Miller's conduct could not be considered an intervening and superseding cause of the Johnsons' deaths.

Defendant's claim of instructional error is related to the causation element of the charged offenses. Causation is an issue for the finder of fact. *People v McKenzie*, 206 Mich App 425, 431; 522 NW2d 661 (1994). The causation element of a criminal offense encompasses two components: factual cause and proximate cause. *People v Feezel*, 486 Mich 184, 194; 783 NW2d 67 (2010). "Factual causation exits if a finder of fact determines that 'but for' defendant's conduct the result would not have occurred." *Id*. at 194-195. At a pretrial hearing, defendant conceded that the impact of his vehicle caused the Johnsons' deaths. Factual causation alone, however, is

not sufficient to find a defendant criminally responsible. *Id*. 195. The prosecutor was also required to demonstrate that the defendant's actions were "a proximate cause" of the victims' deaths. *Id.*

A defendant's conduct qualifies as a proximate cause when the victim's injury or death is a direct and natural result of the defendant's actions. "Proximate causation is a legal construct designed to prevent criminal liability from attaching when the result of the defendant's conduct is viewed as too remote or unnatural." *Id.* at 195. Accordingly, proximate cause will be lacking "[i]f the finder of fact determines that an intervening cause supersedes a defendant's conduct such that the causal link between the defendant's conduct and the victim's injury was broken." *Id.* (cleaned up). Under that circumstance, criminal liability cannot be imposed. *Id.*

"Whether an intervening cause supersedes a defendant's conduct is a question of reasonable foreseeability." *Id.* Intervening acts of ordinary negligence, because they are reasonably foreseeable, are insufficient to constitute a superseding cause that severs proximate causation. *Id.* By contrast, gross negligence or intentional misconduct can be sufficient to break the causal connection between a defendant's conduct and a victim's death or injury. *Id.* But gross negligence is not merely an enhanced version of ordinary negligence. It encompasses those actions that evidence a "wantonness and disregard for the consequences which may ensue." *Id.* Indeed, "wantonness" includes conduct "indicating that the actor is aware of the risks but indifferent to the results." *Id.*

Applying the foregoing principles, the instruction requested by defendant would have been warranted only if the evidence was sufficient for the jury to conclude that Miller's conduct constituted gross negligence. The evidence, however, did not support defendant's position that Miller's operation of his vehicle was grossly negligent. As explained above, several witnesses testified that before the collision, the surrounding traffic had reduced its speed in anticipation of the impending right-lane closure, and the merging traffic was unusually polite and orderly. The testimony given by Miller, as well as that of Patricia Huffer, indicated that Miller was not operating his vehicle in an imprudent manner, let alone a manner that could be considered grossly negligent.

From the testimony and evidence in the record, a jury could not conclude that Miller's action of merging in anticipation of a lane closure, even in the manner described by Moskowitz, constituted gross negligence. Miller's conduct was not so unforeseeable that it should sever the connection between defendant's conduct and the victims' deaths. Indeed, all witnesses agreed that appropriate signage beginning a couple of miles in advance warned motorists of the right-lane closure and the need to merge into the left lane. Thus, it was foreseeable that motorists would be merging from the right to the left lane. Further, the evidence of defendant's conduct indicated that mere moments before rear-ending the Johnson vehicle, defendant was traveling at 78 mph and texting from his cell phone. In addition, there was no evidence that defendant took any evasive maneuvers before impact. He neither reduced his speed, applied his breaks, nor changed his course of travel to avoid rear-ending the Johnson vehicle.

Reasonable minds could not logically conclude that Miller's actions while merging into the left lane in anticipation of the right lane's closure were grossly negligent or in "wanton disregard" of the consequences. At most, the manner in which Miller operated his vehicle might rise to the level of ordinary negligence. Ordinary negligence is considered reasonably foreseeable and is thereby deemed insufficient to constitute a superseding cause that would thereby sever the

causal connection between defendant's conduct and the victims' deaths. Because the record does not show that Miller's actions rose to the level of gross negligence, which is required to constitute an intervening and superseding cause sufficient to break the chain of causation, the trial court properly declined to give the special instruction requested by defendant.

## B. PRESERVATION OF EVIDENCE

Defendant next argues that he is entitled to appellate relief because the prosecutor failed to preserve potentially exculpatory evidence, specifically, the Miller and Johnson vehicles. In a pretrial motion, defendant requested that the trial court instruct the jury that it could infer that evidence from those vehicles would have been favorable to defendant. The trial court denied defendant's request based on its finding that the Johnson vehicle was still available for defendant's inspection and because there had been no showing of bad faith when the police released the Miller vehicle to its owner. On appeal, defendant argues that the prosecutor violated his rights to due process by failing to preserve the vehicles. He further contends that the trial court erred by failing to give an adverse-inference instruction. We find no merit to defendant's claims of error.

In *Arizona v Youngblood*, 488 US 51, 57; 109 S Ct 333; 102 L Ed 2d 281 (1988), the United States Supreme Court held that "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." Consistent with this ruling, this Court held in *People v Hank*, 276 Mich App 91, 95; 740 NW2d 530 (2007), that "in order to warrant reversal on the claimed due process violation, a defendant must prove that the missing evidence was exculpatory or that law enforcement personnel acted in bad faith." In this case, defendant has not demonstrated that access to the vehicles would have yielded exculpatory evidence or that law enforcement acted in bad faith when it released the Miller vehicle to it owner.

At the outset, defendant has failed to show that the Johnson vehicle was destroyed or was otherwise unavailable for inspection. Indeed, the prosecutor represents that defendant inspected the Johnson vehicle and that it remains available for further inspection. To the extent that defendant argues that the evidentiary value of the Johnson vehicle was compromised by the failure of the police to properly store the vehicle, defendant has provided nothing to substantiate this claim. Ultimately, on multiple fronts, defendant has not established the factual predicate necessary to support any request for relief related to the Johnson vehicle.

With respect to the Miller vehicle, the record indicates that this vehicle was released only after the police determined that continued storage and preservation were unnecessary because the vehicle did not represent relevant evidence. The police concluded that Miller's operation of his vehicle did not precipitate the multi-vehicle collision. Given that the vehicle was secured, photographed, and measured, and the absence of information that the Miller vehicle represented relevant evidence, defendant has failed to establish that the police or the prosecutor acted in bad faith when they released the vehicle to its owner.

Defendant has also failed to sustain his burden of showing that an examination of the Miller vehicle would have yielded exculpatory evidence. Defendant simply asserts that the evidence was potentially exculpatory. He provides nothing to substantiate this assertion. His declaration that the Miller vehicle could have exonerated him is mere speculation. Instead, the existing record

demonstrates that an examination of the Miller vehicle would not have provided evidence exonerating defendant or even helpful to his defense. Defendant has failed to demonstrate that the Miller vehicle was exculpatory, potentially exculpatory, or that the police acted in bad faith. Consequently, he has not established a due-process violation.

Defendant also argues that the trial court erred by denying his request for an adverse-inference instruction regarding the Miller and Johnson vehicles. This argument is without merit.

"Michigan courts have long recognized that when material evidence in control of a party is not produced at trial, the opposing party is entitled to an adverse inference instruction." *People v Cress*, 250 Mich App 110, 157 n 27; 645 NW2d 669 (2002), rev'd on other grounds 468 Mich 678 (2003). Such an instruction is only permitted, however, when the prosecutor acts in bad faith. *Id*. at 157-158. There is no evidence that the sheriff's department or the prosecutor acted in bad faith when it released the Miller vehicle to its owner. Further, there is no support for the proposition that the Miller vehicle contained exculpatory evidence or that the sheriff's department knew that it contained exculpatory evidence when it released the vehicle. Accordingly, the trial court properly declined to instruct the jury that any evidentiary material related to the vehicle would have been favorable to defendant.

Affirmed.

/s/ Michael J. Riordan
/s/ Karen M. Fort Hood
/s/ Brock A. Swartzle