*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
May 13, 2025
10:21 AM

Plaintiff-Appellee,

v

No. 367405
Wayne Circuit Court
LC No. 22-002431-01-FC

AMONTE TIQUAN CLAYTON,

Defendant-Appellant.

Before: M. J. KELLY, P.J., and SWARTZLE and ACKERMAN, JJ.

PER CURIAM.

Defendant appeals by right his jury convictions of first-degree premeditated murder, MCL 750.316, possession of a firearm by a person convicted of a felony (felon-in-possession), MCL 750.224f, and two counts of carrying a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced him to life imprisonment without the possibility of parole for murder, three to five years for felon-in-possession, and two years for each felony-firearm conviction. We affirm.

## I. BACKGROUND

This case arises from the August 6, 2021, shooting death of Tyree Fisher outside the home of Brittany Campbell, the mother of defendant's children. Campbell testified that she began spending time with Fisher one month prior, but they were not romantically involved. Around the time Fisher and Campbell started spending time together, Campbell and defendant had a heated argument during which he broke windows at her home.

On the morning of August 6, Campbell and defendant exchanged text messages about their children. Campbell told defendant that the children were with her mother. Around 1:30 p.m., Campbell and Fisher arrived at her home in her white Chevy Cobalt and parked in her cousin's driveway next door. Defendant and his friend, Rodney Tallent, arrived in a black Dodge Durango and parked in front of the cousin's home. Campbell exited her vehicle and spoke with defendant while he remained inside his car. She told him that he could retrieve the children from her mother's house, and he indicated agreement before leaving.

-1-

Campbell then went inside, leaving Fisher in the passenger seat. Moments later, she heard four gunshots. She ran outside to find the passenger door open and Fisher missing. His phone was on the ground nearby. She found Fisher on a lawn two houses away. He was bleeding, but she could not locate his wounds. She attempted to render aid, but Fisher later died from four gunshot wounds.

Tallent testified that defendant picked him up around 12:30 p.m. to help fix Campbell's broken windows. After first stopping at Campbell's mother's house—where Campbell's mother said defendant could not visit the children—defendant drove to Campbell's. Following a brief conversation with Campbell, defendant drove away but soon returned, stating he wanted to fix the windows.

When they returned, defendant and Tallent began measuring a broken window. Defendant returned to the vehicle, retrieved a handgun from his backseat, and yelled, "Rodney, Rodney, get in the car." At the same time, Tallent heard four to eight gunshots. Initially, Tallent said he could not recall whether defendant fired the weapon because he was under the influence of drugs. But after reviewing his prior statements to police, he testified that he saw defendant shoot into the Cobalt. He then saw a man running while holding his stomach.

After the shooting, defendant drove them to an apartment building, where Tallent helped him cut off his electronic tether. They left the tether there and drove to another apartment complex, where defendant changed clothes.

Police located the tether in an abandoned building about a mile and a half from the shooting. GPS data from the tether placed it at the scene at the relevant time. Weeks later, officers arrested defendant in Mississippi. He was convicted and sentenced as described above and now appeals.

## II. DISCUSSION

## A. SUFFICIENCY OF THE EVIDENCE

Defendant first submits that the prosecution presented insufficient evidence of premeditation and deliberation to support his first-degree murder conviction. We review this challenge de novo, viewing the evidence in the light most favorable to the prosecution to determine whether a rational trier of fact could find that the elements of the offense were proven beyond a reasonable doubt. *People v Kenny*, 332 Mich App 394, 402-403; 956 NW2d 562 (2020). "[T]he standard of review is deferential: a reviewing court is *required* to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Oros*, 502 Mich 229, 239; 917 NW2d 559 (2018) (citation omitted). The prosecution is not required to disprove every reasonable theory of innocence; it "need only prove the elements of the crime in the face of whatever contradictory evidence is provided by the defendant." *Kenny*, 332 Mich App at 403.

"The elements of first-degree murder are (1) the intentional killing of a human (2) with premeditation and deliberation." *Oros*, 502 Mich at 240 (cleaned up). A killing is deliberate when it is committed without adequate provocation "or while undisturbed by hot blood." *People v Smith*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 362114); slip op at 10. "A murder is premeditated when the defendant had the opportunity to consider his actions for some length of

time before completing the murder." *Id*. Both premeditation and deliberation require "sufficient time to allow the defendant to take a second look." *People v Jackson*, 292 Mich App 583, 588; 808 NW2d 541 (2011) (quotation marks and citation omitted). That period need not be long; "a brief moment of thought or a matter of seconds" may suffice. *Oros*, 502 Mich at 242-243 (cleaned up).

Although premeditation and deliberation are distinct elements, they may be established by the same facts and are often "incapable of direct proof absent an admission or confession by the defendant." *Id*. at 240-241. They may be inferred from the facts and circumstances, provided those inferences are supported by the record and not based on mere speculation. *People v Bass*, 317 Mich App 241, 266; 893 NW2d 140 (2016). Given the inherent difficulty in proving a defendant's state of mind, only minimal circumstantial evidence is required to support an inference of intent. *People v Cameron*, 291 Mich App 599, 615; 806 NW2d 371 (2011).

"Premeditation may be established through evidence of the following factors: (1) the prior relationship of the parties; (2) the defendant's actions before the killing; (3) the circumstances of the killing itself; and (4) the defendant's conduct after the homicide." *People v Walker*, 330 Mich App 378, 384; 948 NW2d 122 (2019) (citation omitted). The type of weapon used and location of the victim's wounds may also be indicative of premeditation. *People v Coddington*, 188 Mich App 584, 600; 470 NW2d 478 (1991).

The prosecution presented ample evidence to support the jury's finding of premeditation and deliberation. On the day of the shooting, defendant was upset after being denied visitation with his children. After an initial interaction with Campbell at her home, he left but returned approximately ten minutes later with Tallent. While Tallent began measuring a broken window, defendant returned to his vehicle and retrieved a handgun. Defendant then called for Tallent to return to the car and gunshots followed. From that evidence, the jury could reasonably infer that defendant made the decision to kill Fisher during this interval and acted upon that decision after retrieving the firearm.

There was also evidence suggesting that defendant ambushed Fisher, who was seated in the front passenger seat of Campbell's car at the time of the shooting. Tallent testified that he saw defendant fire into the vehicle. An evidence technician recovered four shell casings from the area: two along the edge of the driveway where the Cobalt was parked, one on a berm between Campbell's and her neighbor's homes, and one on a neighbor's front lawn. A trail of blood led from the Cobalt's front passenger seat to the front lawn where Fisher was found. The evidence supported an inference that defendant fired multiple shots as Fisher attempted to flee.

The number and placement of the shots further supported deliberation. The spacing of the casings suggested a pause between shots, sufficient time for defendant to reflect and "take a second look." *Jackson*, 292 Mich App at 588.

Defendant's conduct after the shooting also supported the jury's finding. He immediately fled the scene, removed his electronic tether, and traveled to Mississippi. That conduct is indicative of consciousness of guilt. See *Smith*, ___ Mich App at ___; slip op at 11 (hiding the gun used in the homicide supported an inference of consciousness of guilt).

Viewing the totality of the evidence in the light most favorable to the prosecution, a reasonable jury could conclude that defendant formed the intent to kill, had time to reflect, and acted with premeditation and deliberation. The evidence was therefore sufficient to sustain his first-degree murder conviction.

## B. EVIDENCE REGARDING DEFENDANT'S TETHER

Defendant next contends that the trial court erred in admitting evidence related to his tether. He maintains that the evidence was irrelevant, substantially more unfairly prejudicial than probative, and constituted impermissible character evidence.

Defendant did not object to the admission of the tether evidence at trial, so we review it for plain error affecting substantial rights. *People v Thorpe*, 504 Mich 230, 252; 934 NW2d 693 (2019). To obtain relief under that standard, a defendant must show that "(1) an error occurred, (2) the error was plain, i.e., clear or obvious, and (3) the plain error affected substantial rights, i.e., prejudiced defendant by affecting the outcome of the proceedings." *People v Anderson*, 341 Mich App 272, 279; 989 NW2d 832 (2022) (quotation marks and citation omitted). Even if those requirements are met, reversal is warranted only if the error "resulted in the conviction of an actually innocent defendant" or "seriously affected the fairness, integrity, or public reputation of judicial proceedings independent of the defendant's innocence." *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999) (cleaned up).

## 1. MRE 401 AND MRE 403

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401.[1] Relevant evidence is admissible unless otherwise excluded by the state or federal constitutions or the rules of evidence. MRE 402.

The tether evidence met this standard. GPS data showed that defendant was at the scene of the crime when the shooting occurred, which made it more likely that he committed the instant offenses. In addition, his removal of the tether and immediate flight from the area supported an inference of consciousness of guilt. See *People v Unger*, 278 Mich App 210, 226; 749 NW2d 272 (2008) (permitting evidence of flight or preparations to flee to support consciousness of guilt).

Even relevant evidence, however, may be excluded under MRE 403 if its probative value is substantially outweighed by the danger of unfair prejudice. " '[U]nfair prejudice' refers to the tendency of the proposed evidence to adversely affect the objecting party's position by injecting considerations extraneous to the merits of the lawsuit, e.g., the jury's bias, sympathy, anger, or shock." *People v Parrott*, 335 Mich App 648, 681 NW2d 548 (2021) (cleaned up). Courts must

---

[1] Our Supreme Court adopted significant amendments to the Michigan Rules of Evidence, effective January 1, 2024. ADM File No. 2021-10, 512 Mich lxiii (2023). Citations and references to the rules of evidence in this opinion refer to the rules in effect at the time of trial.

balance a variety of factors when weighing the probative value of evidence against its prejudicial effect, including:

> the necessary time to present the evidence, whether the evidence is needlessly cumulative, how directly probative the evidence is, how necessary the fact to be proven by the evidence is, whether the evidence would mislead the jury, and whether there is an alternative and less potentially harmful way to prove that fact. [*People v Sharpe*, 502 Mich 313, 331-332; 918 NW2d 504 (2018).]

Defendant claims that the probative value of the tether was "marginal," risked portraying him as a "continuous offender," and duplicated other evidence. The record does not support that conclusion. The tether data was precise, placing defendant at the scene and establishing his movements after the shooting. Unlike the more general location information from cell tower data, the tether provided GPS data tied to defendant personally.

The risk of unfair prejudice was limited. The jury was not told why defendant was wearing a tether, and defendant stipulated to a prior felony conviction for purposes of the felon-in-possession charge. Moreover, evidence is not unfairly prejudicial simply because it is damaging to the defense. *Parrott*, 335 Mich App at 681 ("A party's case is always damaged by evidence that the facts are contrary to his contentions, but that cannot be grounds for exclusion.") (citation omitted). Considering the significant probative value of the tether evidence, defendant has not established that the danger of unfair prejudice mandated the exclusion of that evidence under MRE 403.

## 2. MRE 404(b)

Defendant also takes the position that admission of the tether evidence violated MRE 404(b), which generally bars the use of other-acts evidence to show a defendant's character or propensity to commit a crime.

Under MRE 404(b), evidence of other crimes, wrongs, or acts may be admitted for a non-character purpose, such as motive, intent, or identity. *People v Watkins*, 491 Mich 450, 468; 818 NW2d 296 (2012). "MRE 404(b) only applies to evidence of crimes, wrongs, or acts other than the conduct at issue in the case that risks an impermissible character-to-conduct inference." *People v Jackson*, 498 Mich 246, 262; 869 NW2d 253 (2015) (quotation marks omitted).

That rule does not apply here. The tether evidence was not admitted to show a prior bad act, bad character, or propensity to commit the offense. The prosecution did not disclose the reason defendant was on a tether, and the jury was not asked to infer anything about his prior conduct. The evidence was used to show defendant's location and movements in connection with the charged offenses. Because the evidence was offered for a proper purpose and not to suggest criminal propensity, MRE 404(b) does not bar its admission.

## C. ADDICT-INFORMER INSTRUCTION

Defendant next contends that the trial court erred by failing to give the addict-informer jury instruction, M Crim JI 5.7, which he claims was warranted by Tallent's drug use. Because

Defendant did not request the instruction at trial, we review this claim for plain error affecting substantial rights. *People v Spaulding*, 332 Mich App 638, 652; 957 NW2d 843 (2020).

"A criminal defendant has the right to have a properly instructed jury consider the evidence against him." *People v Ogilvie*, 341 Mich App 28, 34; 989 NW2d 250 (2022) (citation omitted). "The jury instructions must include all elements of the crime charged, and must not exclude from jury consideration material issues, defenses, or theories if there is evidence to support them." *People v Armstrong*, 305 Mich App 230, 240; 851 NW2d 856 (2014) (quotation marks and citation omitted). A trial court may give an instruction to the jury if a rational view of the evidence supports it. *Id.*

At trial, Tallent admitted that he was a regular user of heroin and under the influence of drugs at the time of the shooting and during his subsequent statement to police. Defendant claims that, in light of that testimony, the jury should have been given the addict-informer instruction, which provides:

> (1) You have heard the testimony of _____, who has given information to the police in this case. The evidence shows that [he / she] is addicted to a drug, namely _____.

> (2) You should examine the testimony of an addicted informer closely and be very careful about accepting it.

> (3) You should think about whether the testimony is supported by other evidence, because then it may be more reliable. However, there is nothing wrong with the prosecutor using an addicted informer as a witness. You may convict the defendant based on such a witness's testimony alone if you believe the testimony and it proves the defendant's guilt beyond a reasonable doubt.

> (4) When you decide whether to believe [*name witness*], consider the following:

> (a) Did the fact that this witness is addicted to drugs affect [his / her] memory of events or ability to testify accurately?

> (b) Does the witness's addiction give [him / her] some special reason to testify falsely?

> [(c) Does the witness expect a reward or some special treatment or has (he / she) been offered a reward or been promised anything that might lead (him / her) to give false testimony?

> (d) Has the witness been promised that (he / she) will not be prosecuted for any charge, or promised a lighter sentence or allowed to plead guilty to a less serious charge? If so, could this have influenced (his / her) testimony?

-6-

(e) Was the witness's testimony falsely slanted to make the defendant seem guilty because of the witness's own interests or to remove suspicion from others, or because (he / she) feared retaliation from others in drug trafficking?

(f) Was the witness affected by the fear of being jailed and denied access to drugs?

(g) Does the witness have a past criminal record?]

(5) In general, you should consider an addicted informer's testimony more cautiously than you would that of an ordinary witness. You should be sure you have examined it closely before you base a conviction on it. [M Crim JI 5.7.]

The addict-informer instruction "should be given upon request, where the testimony of the informant is the only evidence linking the defendant to the offense." *People v Smith*, 82 Mich App 132, 133-134; 266 NW2d 476 (1978). See also *People v Griffin*, 235 Mich App 27, 40; 597 NW2d 176 (1999), overruled in part on other grounds by *People v Thompson*, 477 Mich 146, 148 (2007); *People v McKenzie*, 206 Mich App 425, 432; 522 NW2d 661 (1994).

In this case, a rational view of the evidence does not support giving the addict-informer instruction. Nothing indicates that Tallent was a police informant or that he received a reward, special treatment, or immunity in exchange for his testimony. Moreover, Tallent's testimony was not the only evidence linking defendant to the instant offenses. Campbell testified that defendant and Tallent drove to her house in defendant's black Durango shortly before the shooting, and defendant was wearing pink clothing. Several eyewitnesses likewise described the shooter as an African American male in pink who fled in a black Durango. Because defendant is African American and Tallent is Caucasian, that evidence pointed to defendant as the shooter.

The record does not support a finding that Tallant was an informant, and his testimony was not the sole evidence linking defendant to the crime. For those reasons, the trial court did not err by failing to give the instruction.

Even if the instruction should have been given, any error was harmless. Defendant suggests that the jury "would have viewed Tallent's testimony more critically and probably acquitted [defendant]" had it received the addict-informer instruction. But Tallent repeatedly acknowledged that his memory was impaired due to drug use. And the trial court instructed the jury to assess witness credibility by considering, among other things, whether the witness's memory was accurate, whether the witness was distracted at the time of the events, and whether other factors could have influenced the witness's testimony.

Given those instructions and Tallent's repeated acknowledgment of his drug use, the jury was already equipped to evaluate his credibility. Any omission of the addict-informer instruction did not affect the outcome and was therefore harmless.

D. PROSECUTORIAL MISCONDUCT

Defendant next claims he was denied his due-process right to a fair trial because the prosecutor committed prosecutorial misconduct during closing argument by vouching for Tallent's credibility and disparaging defense counsel.

Defendant did not object to the purported misconduct or request a curative instruction in the trial court, so we review the claim for plain error affecting substantial rights. *People v Isrow*, 339 Mich App 522, 529; 984 NW2d 528 (2021). Even when plain error is established, reversal is not warranted "where a curative instruction could have alleviated any prejudicial effect." *People v Callon*, 256 Mich App 312, 329-330; 662 NW2d 501 (2003).

"[T]he test for prosecutorial misconduct is whether a defendant was denied a fair and impartial trial." *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). "A prosecutor can deny a defendant his or her right to a fair trial by making improper remarks that so infect the trial with unfairness as to make the resulting conviction a denial of due process." *People v Lane*, 308 Mich App 38, 62-63; 862 NW2d 446 (2014) (cleaned up). Claims of prosecutorial misconduct "are decided case by case, and this Court must examine the entire record to evaluate a prosecutor's remarks in context." *Dobek*, 274 Mich App at 64. We evaluate a prosecutor's comments "in light of defense arguments and the relationship the comments bear to the evidence admitted at trial." *Id*.

The prosecution may argue the evidence and reasonable inferences from it but must avoid making prejudicial remarks. *People v Bahoda*, 448 Mich 261, 282-283; 531 NW2d 659 (1995). It is also improper for the prosecution to suggest personal knowledge or belief about a witness's credibility or to vouch for the credibility of a witness by implying special knowledge or insight into the witness's truthfulness. *People v Meissner*, 294 Mich App 438, 456; 812 NW2d 37 (2011); *People v Thomas*, 260 Mich App 450, 455; 678 NW2d 631 (2004).

Defendant first claims that the prosecutor improperly vouched for the credibility of Tallent's testimony during closing argument by stating:

You know, and then [defense counsel] talks about, well, Rodney Cam—Rodney Tallent, you know, he couldn't remember things.

He couldn't remember things.

What I find interesting is that, you saw a snippet from a video, where he was interviewed, on video.

You know that he testified before, under oath.

Out of all those things, he could have picked Rodney Tallent out, and picked apart his statement, for every little inconsistency that he ever may made, regarding this incident.

You know what he got?

-8-

Oh, I used heroin in the past.

There's nothing else from him.

Right?

When it came to, to the, to the nuts and bolts of what we're here to decide, you know, did you see Mr. Tallent with a gun—or, did you see Mr. Clayton with a gun?

Did you see Mr. Clayton shoot?

He had nothing.

There was nothing presented to you, that he's ever lied about that.

*If anyone, I was the one impeaching him with his sudden memory loss, right?*

*I'm the one who's telling you the truth about his inconsistent statements, when he came there to court, and claimed he didn't remember things.*

*Right?*

*I'm not hiding anything from you.*

*So, when it comes to trying to pick apart Rodney Tallent's statement, and to look at all these inconsistencies, and try to make it, portray it like he's some big liar.*

He didn't bring forth anything, on cross-examination, that points to, when it comes to the crucial testimony, were you with [defendant]? [Emphasis added.]

That argument did not constitute improper vouching. The prosecution neither claimed to have special knowledge of Tallent's truthfulness nor implied such knowledge. Rather, the argument focused on the evidence presented at trial and why defendant's challenges to Tallent's credibility were unpersuasive.

Moreover, the remarks responded to defense counsel's closing argument. Defense counsel asserted that the prosecution bolstered Tallent's credibility on one issue while downplaying it on another. Counsel described Tallent as confused, with testimony "all over the place." The prosecution's statement that it was "not hiding anything from" the jury did not constitute prosecutorial misconduct. See *People v Kennebrew*, 220 Mich App 601, 608; 560 NW2d 354 (1996) ("[A]n otherwise improper remark may not rise to an error requiring reversal when the prosecutor is responding to the defense counsel's argument.").

Defendant also claims the prosecution personally disparaged defense counsel when it argued:

Now, he kinds [sic] of wants to tip around this whole idea, tip toe around the, maybe Rodney Tallent is the shooter, right?

We know that there was a white guy, and Rodney Tallent's white.

So, maybe he was the one who really did it?

But he's not serious about that.

He has no serious theory about how and why that could have taken place.

He just wants to hint it at [sic] you, so that, in your minds, you think to yourself, you know what, maybe there is something to that?

You have to critically think about it.

And like, when I talked about in my, uh, closing argument, it makes absolutely no sense, for Rodney Tallent to be the shooter, in this case?

Why would the defendant allow somebody else to go shoot somebody, and then drive the person away, and then cut off the tether, and do all these other things that make you look guilty, when Rodney Tallent is the shooter?

And what does Rodney Tallent do?

Well, he sits at his house, waits for the Police to get there, and frames the defendant.

Does that story make any sense at all?

That makes no sense.

In *People v Wise*, 134 Mich App 82, 101-102; 351 NW2d 255 (1984), this Court explained why a prosecutor may not disparage defense counsel in closing arguments:

The prosecutor may not question defense counsel's veracity. When the prosecutor argues that the defense counsel himself is intentionally trying to mislead the jury, he is in effect stating that defense counsel does not believe his own client. This argument undermines the defendant's presumption of innocence. Such an argument impermissibly shifts the focus from the evidence itself to the defense counsel's personality. [Citations omitted.]

The prosecution did not personally disparage defense counsel during its closing argument. The remarks did not personally attack defense counsel. Rather, they were directed at the defense theory that Tallent was the shooter. By stating that defense counsel was "not serious" about that theory, the prosecution was emphasizing its lack of evidentiary support. Moreover, the remarks were made in response to defense counsel's assertion that Tallent was the only white man at the

-10-

scene and that one witness identified the shooter as white.  Those comments do not constitute prosecutorial misconduct.  See *Kennebrew*, 220 Mich App at 608.

Because neither line of argument constituted prosecutorial misconduct, the trial court did not plainly err in allowing the remarks, and defendant is not entitled to relief on this claim.[2]

### E.  ISSUES RAISED IN STANDARD 4 BRIEF

Finally, in his Standard 4 brief,[3] defendant contends that the prosecution knowingly allowed Tallent to present false testimony and failed to disclose alleged incentives provided in exchange for that testimony, thereby violating his right to due process.

Defendant failed to preserve that issue by contemporaneously objecting when the purportedly false testimony was offered.  *Isrow*, 339 Mich App at 529.  "We review unpreserved claims of prosecutorial error for plain error affecting defendant's substantial rights."  *People v Thurmond*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 361302); slip op at 9.

"A defendant's right to due process is violated when a prosecutor knowingly allows false testimony from a witness to go uncorrected."  *Id*. at ___; slip op at 10.  "To prove prosecutorial error on the basis of perjury, a defendant must show two things—first, that a witness knowingly made a false statement, and second, that the prosecutor knowingly elicited the false statement."  *Id*. (cleaned up).  While the prosecution must advise the trial court when a witness gives substantially misleading testimony, there is no obligation to correct every minor inaccuracy or act as surrogate defense counsel.  *People v Smith*, 498 Mich 466, 476-477; 870 NW2d 299 (2015).  A new trial is required only if the uncorrected testimony could have, in any reasonable likelihood, affected the judgment of the jury.  *Id*. at 476, 483.

Defendant has not met this burden.  He fails to identify any specific portion of Tallent's testimony that was knowingly false.  Instead, he relies on inconsistencies between Tallent's trial

---

[2] Defendant claims that his trial counsel provided ineffective assistance by (1) failing to object to the tether evidence, (2) failing to request an addict-informer instruction, and (3) failing to object to the prosecution's remarks during closing argument.  Each claim fails because it rests on an underlying issue that lacks merit.  As discussed above, the tether evidence was admissible to show flight and consciousness of guilt, the addict-informer instruction was not supported by the record, and the challenged prosecutorial remarks were neither improper nor outcome-determinative.  Counsel is not ineffective for failing to raise objections or request instructions that would have been futile.  See *People v Muniz*, 343 Mich App 437, 449; 997 NW2d 325 (2022) ("Counsel is not ineffective for declining to raise a futile objection."); *People v Smith*, 336 Mich App 79, 104; 969 NW2d 548 (2021) (holding that the trial counsel's failure to request a jury instruction was not objectively unreasonable because a rational view of the evidence did not support the instruction).

[3] "A 'Standard 4' brief refers to a brief filed on behalf of an indigent criminal defendant pursuant to Michigan Supreme Court Administrative Order No. 2004-6, Standard 4, 471 Mich c, cii (2005)."  *People v Lowrey*, 342 Mich App 99, 103 n 1; 993 NW2d 62 (2022).

testimony and his grand-jury[4] and preliminary-examination testimonies. The record demonstrates that Tallent's memory was impaired due to his drug use at the time of the incident. To address this, the prosecution refreshed his recollection using prior statements, including those made to police and during the preliminary examination. The existence of inconsistent statements does not, by itself, establish that the testimony at trial was false. See *Bass*, 317 Mich App at 275 ("Although an inconsistent prior statement may be a mechanism to impeach a witness's credibility at trial, it is not definitive evidence that the trial testimony is false."). Nor does Tallent's impaired recall render his trial testimony perjurious. *Id*. at 274-275. In sum, defendant has not met his "burden of demonstrating that [Tallent's] testimony was in fact false," *Thurmond*, ___ Mich App at ___; slip op at 10.

Defendant also claims that the prosecution withheld information about incentives or promises made to Tallent in exchange for his testimony. Under MCR 6.201(B)(5), the prosecution must disclose plea agreements, grants of immunity, or other agreements made in exchange for a witness's testimony. But there is no record support for the claim that Tallent received any incentive, immunity or otherwise, in exchange for his cooperation. Defendant offers no affidavits, documents, or trial evidence suggesting such an agreement existed. Without factual support, the claim cannot succeed.

Because defendant has not established the factual predicate for either alleged due-process violation, he has not demonstrated plain error, and no relief is warranted on the issues raised in his Standard 4 brief.

Affirmed.

/s/ Michael J. Kelly
/s/ Brock A. Swartzle
/s/ Matthew S. Ackerman

---

[4] Contrary to defendant's assertion, the record shows that he was charged by complaint and warrant. He was not charged by grand-jury indictment, and no grand-jury proceedings were held in the instant case.